2017 PA Super 57

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
DAMON WESLEY SAVAGE, :
:
Appellant : No. 174 WDA 2016

Appeal from the Judgment of Sentence January 28, 2016
In the Court of Common Pleas of Fayette County
Criminal Division at No.: CP-26-CR-0000536-2015

BEFORE: DUBOW, J., MOULTON, J., and MUSMANNO, J.

OPINION BY DUBOW, J.: **FILED MARCH 07, 2017**

Appellant, Damon Wesley Savage, appeals from the Judgment of Sentence entered in the Fayette County Court of Common Pleas following his convictions for Aggravated Assault of a Child less than six years of age, Simple Assault, Endangering the Welfare of Children, and Recklessly Endangering Another Person.[1] After careful review, we affirm.

In this child abuse case, Appellant is the victim's father. Appellant lived with his girlfriend, Diana Bennett, and shared custody of the victim with the victim's mother. On October 22, 2014, the victim was nine months old and while staying at Ms. Bennett's home, suffered facial injuries as a result of severe slaps across the left side of his face.

---

[1] 18 Pa.C.S. § 2702(a)(8); 18 Pa.C.S. § 2701(a)(1); 18 Pa.C.S. § 4304(a)(1); and 18 Pa.C.S. § 2705, respectively.

Before Appellant was scheduled to drop off the victim to the victim's mother, Appellant called the victim's mother to tell her that the victim had a small bruise by his eye as a result of the victim falling off a bed. N.T. Trial at 12.[2] When the victim's mother saw the victim and the severity of the marks on the victim's face, the victim's mother took the victim to the hospital. *Id*. at 13, 15. The hospital admitted the victim.

The victim's mother then contacted the police and met with Trooper James Garlick and a caseworker from the Children and Youth Service Agency ("CYS"), Brittany Liptak. *Id*. at 15.

Trooper Garlick then interviewed Appellant at Ms. Bennett's home. Appellant told the state trooper that it was the Appellant who "was alone with [the victim] in the bedroom." *Id*. at 32. Appellant further explained that he "was changing [the victim]'s diaper and he turned to get some powder and that when he turned back around [the victim] rolled off the bed onto the floor." *Id*.

Rather than interview Appellant alone, Trooper Garlick interviewed Appellant while Ms. Bennett was in the next room. Ms. Bennett periodically interrupted the interview and corrected the Appellant's statements about the incident. Each time, Appellant concurred with Ms. Bennett's statements about the incident. *Id*. at 49. In fact, Appellant stated originally that the

---

[2] The Notes of Testimony from Appellant's trial consist of two days of proceedings from January 11 and 12, 2016, combined into one volume.

injury was on the right side of the victim's face, but Ms. Bennett interjected that the injury was on the left side of the victim's face. *Id*. at 47.

While the medical professionals were treating the victim in the hospital, a doctor examined the victim and concluded that the injuries were not consistent with a fall from a bed and non-accidental. Commonwealth's Exhibit 4; N.T. Trial at 22-26. As a result, the state trooper obtained an arrest warrant for Appellant the next day.

The state trooper served the arrest warrant on Appellant and while transporting Appellant to the State Police Barracks, Appellant changed his story and said that he lied the previous day. Appellant stated that he was out riding his "quad" while Ms. Bennett took care of the victim. N.T. Trial at 73. In particular, Appellant said that Ms. Bennett "must of snapped and slapped the victim" and Ms. Bennett had problems with CYS and her son. *Id*. at 75. Appellant also said that "he agreed to take the blame for the victim falling out of bed." *Id*. at 76.

Brittany Liptak, the CYS caseworker, interviewed Ms. Bennett's son, H.B., who lived with Ms. Bennett and Appellant. At the time of the interview, H.B. was in first grade. Ms. Liptak prepared a report, which included a summary of H.B.'s statements to her ("CYS Report"). H.B. told Ms. Liptak that it was his mother, Ms. Bennett, who was with the victim at the time of the incident and Appellant was downstairs. H.B. also stated that his mother "smacks him in the face a lot because he talks back" and that his

mother "has a mean smack." *Id*. H.B. also stated that his mother "hasn't smacked his face in a pretty long time because he is good now." *Id*.

Ms. Liptak testified that H.B. did not have any problem remembering, was clear on what he said and she believed him. N.T. Trial at 178.

The trial began on January 11, 2016. The Commonwealth first called Dr. Adelaide Eichmann, who is the pediatrician at Children's Hospital in Pittsburgh and examined the victim. Dr. Eichmann concluded that the victim's injuries were non-accidental and the result of child abuse.

In particular, Dr. Eichmann concluded that the victim's injuries were as a result of "slap marks on his face." *Id*. at 22, 26. She also found the victim's injuries were not consistent with falling off a bed. *Id*.

The next witness was State Trooper James Garlick who investigated the claim of child abuse. Trooper Garlick tesified that Appellant initially stated that he was with the victim and the victim fell off the bed. Trooper Garlick also testified about Diana Bennett interrupting his interview with Appellant and correcting Appellant's statements.

Trooper Garlick further testified that Appellant changed his story after Trooper Garlick arrested Appellant. Appellant stated that the victim was with Ms. Bennett at the time of the incident and he took the blame the day before in order to prevent CYS from investigating Ms. Bennett's ability to care for her child. *Id*. at 34.

The Commonwealth next called Diana Bennett who testified that it was Appellant who was with the victim when she heard the victim cry. She then went into the bedroom where Appellant was with the victim and Appellant was trying to console the victim. *Id*. at 111. On cross-examination, she admitted that once she slapped H.B., her son. *Id*. at 115. She also testified that CYS investigated her ability to care for H.B. because of her addiction to heroin. *Id*. at 116.

Appellant's counsel then wanted to call H.B. as a witness. The trial court held an *in camera* interview of H.B. to consider his competency. After asking him questions about his ability to differentiate between telling the truth and a lie, Appellant's counsel asked him about the statements he made to CYS.

Although H.B. remembered the interview and making statements, he recanted his earlier statements. *Id*. at 164, 165. In particular, H.B. now testified that he was not at home when the incident occurred. *Id*. at 163.

H.B. also testified that his mother, Diana Bennett, talked to him about his trial testimony, once at Christmas and immediately before the trial. *Id*. at 165. H.B., however, testified that he could not specifically remember what his mother said to him about the testimony that he was to give.

H.B., however, could remember his mother's version of the events. H.B. testified that his mother told H.B. that H.B. was at school at the time of the incident, his mother was in her room and Appellant was with the victim

when the incident occurred, and the victim fell off a bed. *Id*. at 165, 167, 168.

H.B. also recanted his statement that he gave to the CYS worker that his mother slapped him. H.B. testified that his statement to the CYS worker was a lie, and that his mother did not slap him but only pushed him away after H.B. bit her in the stomach. *Id*. at 166.

Although the trial court found H.B. competent, it found that H.B. was not at home at the time of the incident and thus, lacked the personal knowledge about the incident to testify. *Id*. at 169.

The jury convicted Appellant of Aggravated Assault of a Child less than 6 years of age, Simple Assault, Endangering the Welfare of Children, and Recklessly Endangering Another Person. On January 28, 2016, the trial court sentenced Appellant to a term of 6 to 20 months' incarceration.

On February 4, 2016, Appellant filed a Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents five issues for our review:

1. Did the trial court [err] when it refused to allow into evidence a Contact/Summary/Safety Assessment report from Children and Youth Service under the business record exception to the hearsay rule regarding an interview they conducted with [H.B.], a seven[-]year[-]old who was present during the assault, found competent as a witness by the trial court?

[2.] Did the trial court [err] when it refused to allow into evidence the Contact/Summary/Safety Assessment report from Children and Youth Services under the complete story exception to the hearsay rule?

[3.] Did the trial court [err] in not allowing the [Appellant] to enter into evidence the aforementioned report to show someone other than himself might have committed the crime?

[4.] Did the trial court [err] regarding the testimony of [H.B.], a seven[-]year[-]old present at the time of the assault when the court said "I do not believe that you can impeach him with the statement or call him as a hostile witness at age seven[?"]

[5.] Did the trial court [err] when it ruled that the [Appellant] could not impeach his own witness?

Appellant's Brief at 3.[3]

Appellant's issues on appeal collectively deal with two issues: (1) whether the trial court properly precluded Appellant from introducing into evidence the CYS Report, and (2) whether the trial court properly precluded H.B. from testifying. We will address the admissibility of the CYS Report first (Appellant's first three issues), and then address the testimony of H.B. (Appellants fourth and fifth issues).

Admissibility of the CYS Report

When reviewing a trial court's decision regarding the admissibility of evidence, we use an abuse of discretion standard and will only reverse "upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Schoff*, 911 A.2d 147, 154 (Pa. Super. 2006) (citation omitted).

In this case, the CYS Report supported Appellant's defense that it was Ms. Bennett, and not he, who injured the victim.[4] Appellant argues that the

---

[3] Issues reordered for ease of disposition.

trial court erred in precluding him from introducing the CYS Report into evidence because the CYS Report falls within the Business Record exception to the Hearsay Rule. Appellant's Brief at 8-12. In particular, Appellant argues that the CYS report was properly made in the ordinary course of the CYS agency's business, the caseworker properly qualified the CYS Report as the custodian, and the CYS Report is trustworthy. *Id*. We disagree.

Hearsay is an out-of-court statement offered for the truth of the matter asserted. Pa.R.E. 801(c). It is generally inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Rules of Evidence. *Commonwealth v. Yarris*, 731 A.2d 581, 591 (Pa. 1999). Pennsylvania Rule of Evidence 803(6) provides an exception to the hearsay rule for business records as follows:

> **Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

---

[4] Appellant argues that the CYS Report supported his position that if Ms. Bennett slapped H.B. in the past, Ms. Bennett was more likely the one who slapped the victim based on her violent propensities. The use of the CYS Report for this purpose would only be relevant under a Pa.R.E. 404(b) analysis. Appellant failed to make this argument before the trial court or raise it in his 1925(b) Statement, so it is waived.

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Where a business record that would otherwise be admitted as an exception to the hearsay rule itself contains hearsay, it is double hearsay. *See Commonwealth v. Sanchez*, 610 A.2d 1020, 1029 (Pa. Super. 1992). The underlying hearsay must also qualify as a hearsay exception in order for the trial court to properly admit into evidence the business record. *Id*.; Pa.R.E. 805; Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 805.05 *et seq*. (2017 ed. LexisNexis Matthew Bender).

Applying this principle in *Commonwealth v. Simmons*, 548 A.2d 284, 288 (Pa. Super. 1988), this Court held that the trial court properly excluded, as inadmissible hearsay, a portion of a medical examiner's report indicating the location of the crime involved in that case. Though the report itself was made in the ordinary course of the medical examiner's business, "the preparer of the report had no independent knowledge of the location of [*sic*] crime but had relied on information supplied to the medical examiner." *Id*. In other words, the medical examiner's office obtained the information

about the location of the crime from sources outside of the medical examiner's office and thus, that information was hearsay and inadmissible unless it independently fell into an exception to the hearsay rule.

In this case, H.B.'s statements originate from a source outside of CYS and, thus, are not covered by the business records exception to the hearsay rule just because the statements were contained in a report that CYS prepared. Rather, those statements must independently fall within an exception to the hearsay rule. In other words, H.B.'s statements originated from H.B., a source outside of CYS. This is similar to the information in **Simmons** in which the source of the location of the crime in the coroner's report was not from the coroner's office, but an external source. As such, the information must fall within another exception to the hearsay rule to be admissible. **Simmons**, **supra** at 288.

Appellant fails to argue or point to any other exception to the hearsay rule for H.B.'s statements and thus, we must conclude that H.B.'s statements contained in the CYS Report are hearsay and the trial court properly precluded them from evidence.

Appellant alternatively argues that the CYS Report is admissible under the "complete story exception" to the hearsay rule. The trial court rejected this theory on the ground that the purpose of admitting the CYS Report would be to establish that it was not Appellant, but Ms. Bennett, who injured the victim, not to complete a small detail in completing the story of a crime:

> The Court did not allow [the CYS report] as substantive evidence under the "Complete Story" exception because that exception relates to *res gestae*, and is allowed as one piece of a puzzle when necessary to complete the story of the crime, establishing the motive or the existence of a plan, etc. **See Commonwealth v. Mayhue**, [] 639 A.2d 421 ([Pa.] 1994). It is obvious that, in [Appellant's] view, the "complete story" includes his claim made during his second interview with Trooper Garlick that Diana Bennett must have injured the child. However, in this Court's view of this case, there was no puzzle to be completed so as to get a true and accurate account of exactly what the crime was and/or why it was committed. The CYS report is hearsay, and the "complete story" exception is not applicable here. **See also Commonwealth v. Levanduski**, 907 A.2d 204 (Pa. Super. 2006).

Trial Court Opinion at 6. We agree.

Finally, Appellant argues that the trial court erred in not entering into evidence the CYS Report "to show [that] someone other than himself could have committed the crime." Appellant's Brief at 7. Although we agree that H.B.'s statements are exculpatory, Appellant wholly fails to point to any legal basis to permit double hearsay evidence just because the statements are exculpatory.[5]

Accordingly, the trial court properly refused to admit the CYS Report at trial and we discern no abuse of discretion.

---

[5] Appellant relies upon cases that provide for the general proposition that "evidence which tends to show that the crime for which an accused stands trial was committed by someone else is relevant and admissible." **Commonwealth v. McGowan**, **supra** at 115 (citing **Ward**, **supra** at 797). However, such evidence must be "relevant and not subject to exclusion under one of our established evidentiary rules." **Id**. (citing **Ward**, **supra** at 797).

- 11 -

Preclusion of H.B.'s Testimony

In his fourth and fifth issues, Appellant avers that the trial court improperly precluded H.B.'s testimony at trial based on the trial court's statement that "I do not believe that you can impeach him with the statement or call him as a hostile witness at age seven." Appellant's Brief at 13.

In its Opinion, the trial court admits that it incorrectly stated that Appellant's counsel could not impeach its own witness who was seven years old. The trial court, however, at trial and in its Opinion, also justifies its decision to preclude Appellant from calling H.B. on the grounds that H.B. testified before the court that H.B. was not at home when the victim was injured and thus, "lacks the foundation from having seen this [incident] or heard it." N.T. Trial at 169.

In particular, the trial court relies upon Pennsylvania Rule of Evidence 602 that provides that "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Pa.R.E. 602. The trial court, however, in concluding that H.B. lacked personal knowledge of the incident because H.B. testified *in camera* that he was at school when the incident occurred, ignored the fact that H.B. made statements to the CYS worker that H.B., in fact, was at home during the incident.

J. A29006/16

Appellant, however, did not challenge the trial court's finding that H.B.'s recantation of the incident precluded him from testifying pursuant to Pa.R.E. 602. Therefore, the Appellant has waived this issue.[6]

Accordingly, Appellant's claims merit no relief and we affirm Appellant's Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/2017

---

[6] We are troubled that the trial court found that H.B. did not have personal knowledge of the incident when H.B. gave a statement to the CYS worker about the incident and the CYS worker testified that H.B. gave forthright statements. H.B.'s recantation of his statement in the *in camera* proceeding does not mean that he lacks personal knowledge of the incident, especially in light of the fact that his mother talked to him about his testimony. Just because a witness recants a statement does not mean that the witness lacks personal knowledge of the incident. Appellant failed to challenge this aspect of the trial court's ruling and thus, we cannot review this issue on direct appeal. Appellant may choose to raise this issue in a Post Conviction Relief Act petition.