J-S26012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: A.N.L. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: A.B. | |
| | No. 1949 MDA 2016 |

Appeal from the Order Entered November 4, 2016
In the Court of Common Pleas of Columbia County
Orphans' Court at No(s): 236 OC 2015

BEFORE:  BOWES, DUBOW, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 12, 2017**

A.B. ("Mother") appeals from the order entered on November 4, 2016, wherein the trial court terminated her parental rights to her daughter, A.N.L. We affirm.

Mother is a Russian citizen who came to the United States during 2004 on a visa which has since expired.  A.N.L. was born during March 2012 of Mother's relationship with T.L. ("Father") who is not involved in the child's life.[1]  On November 5, 2013, approximately one-and-one-half years after the child's birth, Columbia County Children and Youth Services ("CYS") obtained

_____

[1] The orphans' court also terminated the parental rights of T.L., who neglected to appear at the evidentiary hearing.  He did not appeal the order terminating his parental rights.

*  Former Justice specially assigned to the Superior Court.

custody of A.N.L. due to Mother's substance abuse and inability to satisfy the child's basic needs. The agency was concerned about Mother's substance abuse, criminal activity, and her decision to leave A.N.L. with friends while she travelled to New York for several days at a time. Once CYS obtained custody of A.N.L. during November 2013, the child never returned to Mother's care and control. Since August 2014, A.N.L. remained with her current foster family, which is an adoptive resource.

CYS crafted a family service plan ("FSP") to facilitate Mother's reunification with A.N.L. Under the plan, Mother was required to, *inter alia*, provide for A.N.L.'s basic needs, obtain suitable housing, cooperate with CYS, abstain from substance abuse, refrain from engaging in criminal activity, and attend visitation regularly. Pursuant to a later iteration of the plan, Mother was expected to complete the substance abuse assessment and treatment by July 29, 2015. Mother made a measure of progress during the twenty-six month period between CYS's involvement with the family and the hearing on the petition to terminate her parental rights. However, her compliance with the FSP prior to 2015 was abysmal: she had eight positive urine screens for cocaine or its metabolites, one positive test for ethanol, and two diluted samples that were unreadable. Mother did not submit to a drug and alcohol investigation until December of 2014, and she did not start to participate in the recommended program until January 2015, fourteen months after she lost custody of her daughter. Mother failed to complete

that program and, although she attended an evaluation for a second program administered by a different service provider, she failed to complete that program as well.

On December 21, 2015, CYS filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (5), and (8) and (b). During the ensuing hearing, CYS presented the testimony of Natalie Patterson and Kerri Shaylor, two CYS caseworkers who had been assigned to the family, and Judith Marita Blankenship, Mother's substance abuse counselor at A Better Today. As it relates to one of the issues that Mother asserts on appeal, Ms. Patterson testified, over Mother's hearsay objection, about Mother's failure to complete a second drug and alcohol program administered by Stepping Stones to Recovery ("Stepping Stones"). Mother complained that the witnesses' reliance upon statements included in a letter from Stepping Stones to CYS constituted double hearsay that was barred by Pa.R.E. 802. She argued that, while Ms. Patterson's testimony regarding CYS's records fell within the business records exception to the rule against hearsay, the information in the letter that was provided by Stepping Stones was tantamount to a second level of hearsay that did not fall within any argued exception. Essentially, she contended that CYS was required to produce a representative from Stepping Stones who would be subject to cross-examination about the veracity of the statements in the letter. The

orphans' court overruled Mother's objection and permitted Ms. Patterson to testify about Mother's failure to complete the Stepping Stones program.

At the close of the evidentiary hearing, the orphans' court granted CYS's petition and terminated Mother's parental rights pursuant to § 2511(a) (1), (5), (8) and (b). Mother filed a timely notice of appeal and a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

She presents two issues for our review.

> I.     Whether the Lower Court committed an abuse of discretion when it found that the Columbia County Children & Youth Services Agency established, by clear and convincing evidence, the existence of grounds for terminating the parental rights of Mother where Mother had taken substantial steps toward completion of the goals set forth and required by the Columbia County Children & Youth Services Agency.
>
> II.    Whether the Lower Court erred in overruling Mother's hearsay objections when the Lower Court permitted Columbia County Children & Youth Services Agency caseworkers to testify to information contained in reports of third parties?

Mother's brief at 2.

Our standard of review is well settled.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have

- 4 -

previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Involuntary termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. As the party petitioning for termination of parental rights, CYS "must prove the statutory criteria for that termination by at least clear and convincing evidence." *In re T.R.,* 465 A.2d 642, 644 (Pa. 1983). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester*, 555 A.2d 1202, 1203–04 (Pa. 1989).

As noted, the orphans' court terminated Mother's parental rights pursuant to § 2511(a)(1), (5), (8) and (b). As "we need only agree with [the court's] decision as to any one subsection in order to affirm the termination of parental rights[,]" we review the trial court analysis under §2511(a)(1) and (b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). The relevant sections provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1) and (b).

With respect to § 2511(a)(1), this Court has explained,

A court may terminate parental rights under Section 2511(a)(1) where the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least the six months prior to the filing of the termination petition. The court should consider the entire background of the case[.]

*In re A.S.*, 11 A.3d 473, 482 (Pa. Super. 2010) (citations omitted).

Regarding the definition of "parental duties," we have stated,

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.

- 6 -

. . . .

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003)).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the orphans' court must then engage in three additional lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b). *In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008).

Instantly, the record supports the orphans' court's conclusion that Mother failed to perform her parental duties. A.N.L. has been in placement since 2013. She was removed from Mother's custody due to Mother's substance abuse, unstable housing, and drug-related criminal activity. Mother demonstrated minimal progress toward reunification in three years. In addition to her continued struggles with drugs and alcohol that we

referenced *supra*, Mother neglected to comply with the other aspects of the FSP that were designed to facilitate reunification. For example, since the commencement of the agency's involvement during November 2013, Mother has been arrested three times for DUI and once for driving with a suspended license. At the time of the termination hearing, Mother was confined in Luzerne County prison, having been incarcerated since January 5, 2016, and while she expected to be eligible for release from confinement during December 2016, she must still serve an additional twelve months of electronic monitoring. Moreover, her release from confinement at the end of the referenced term is uncertain because, as an illegal resident, she is subject to an active immigration detainer.

Likewise, as it relates to the housing component, Mother has had five different residences since the family became involved with CYS. Soon after A.N.L.'s placement in CYS's care and control, Mother moved to Florida for five months. When she returned to Pennsylvania during July 2014, Mother lived with several other people in a home on Diamond Avenue in Hazleton, Pennsylvania. Although she lived in that home for one year, CYS never approved the residence because Mother refused to divulge the identity of her housemates so that the agency could complete their background checks. As CYS highlights in its brief, Mother testified that the agency's inquiries about her roommates were "harassment [against] them and something." N.T., 11/4/16, at 176. Next, for approximately two months, Mother rented a

room in a home with shared common areas. Again, however, she failed to provide sufficient information for the agency to complete its required investigation of the other residents. During September 2015, Mother moved in with her paramour in a home with a separate bedroom for A.N.L. Unfortunately for Mother, the residence was not approved because the CYS investigation revealed that the paramour had drug-related criminal charges that disqualified him from living in the home with A.N.L. Mother's most recent residence prior to her incarceration was also with her paramour. During the evidentiary hearing, Mother presented a portion of a residential lease agreement for that residence. Curiously, the lease was dated three days **after** she began serving her incarceration in the Luzerne County Jail.

Thus, the certified record confirms that Mother failed to correct her housing issues. Despite three years of CYS services, Mother still does not have a stable home that is appropriate for her daughter. To the contrary, Mother is incarcerated in the Luzerne County Prison and facing possible deportation.

In relation to the requirement to attend visitation with A.N.L. consistently, the record reveals that Mother attended approximately one-half of the scheduled biweekly two-hour supervised visitations that were offered to her. Tellingly, Mother elected to relocate to Florida at the outset of the dependency proceedings rather than remain in Pennsylvania and develop a parent-child bond with A.N.L. During that five-month period, Mother

attended one visitation with her daughter. While Mother's attendance improved following her return to the area and was consistent during the three month period between October 2015 and January 2016, she has not seen A.N.L. since her incarceration, approximately ten months before the termination hearing. Mother testified that she contacted CYS to demand in-prison visitation with A.N.L., but there is no evidence that she wrote to A.N.L. or attempted to contact her daughter while incarcerated.

The foregoing evidence establishes that CYS satisfied its burden of proving by clear and convincing evidence the grounds for involuntarily terminating Mother's parental rights pursuant to §2511(a)(1), *i.e.*, that Mother has failed to perform any parental duties for A.N.L. for a period in excess of six months.

Having established Mother's failure to perform her parental duties for approximately three years, we next review the additional lines of inquiry required under *In re Z.S.W.*, *supra*. As it relates to Mother's explanation for her past conduct, Mother argues that her prior parental deficiencies were the consequence of her depression, substance abuse, and lack of family support. She contends that after she "hit rock bottom in late 2014 and very early 2015" she made substantial progress toward the FSP goals. Mother's brief at 22. Mother's argument relies, in part, upon the fact that CYS sought to terminate her parental rights' prior to the July 29, 2015 date that it provided for her to complete drug treatment. Thus, highlighting the

progress that she made since February 2015, Mother argues that the termination of parental rights was premature because she "made substantial progress toward completing [her] goals . . . well before the July 29, 2015 deadline." *Id*. at 24. She continues that, had CYS "abided by its deadline," she would have completed her goals. *Id*. at 23. Ultimately, she asserts that the certified record does not sustain the orphans' court's decision to terminate her parental rights.

Mother's contention fails for at least two reasons. First, the July 2015 deadline related to the anticipated date for her to complete the drug and alcohol component of the FSP. That date was not an all-encompassing period of immunity that she was promised. Recall that A.N.L. had been in CYS placement for more than two years when the agency eventually filed its petition to terminate Mother's parental rights and Mother demonstrated modest commitment toward reunification for most of that period.

Second, and more importantly, Mother's belated efforts toward reunification were considerably less than what she now proclaims. Mother highlights that she completed a 21-day inpatient program during May 2015, and **enrolled** in another outpatient program during June 2015. As we previously noted, however, Mother consistently failed to complete the various treatment programs that she initiated. Moreover, while Mother asserts that she had an illuminating moment of discovery during the beginning of 2015, that epiphany did not manifest in her behavior. Indeed,

since February 2015, Mother submitted three positives drug screens: one each for marijuana, cocaine metabolites, and ethanol, and two diluted samples. Furthermore, she tested positive for marijuana as recent as two weeks prior to the hearing on the termination of parental rights. Currently, she is incarcerated.

Similarly, in relation to the housing component, Mother argues unconvincingly that CYS's insistence upon finding a safe home for A.N.L. "placed [her] in an untenable position" when trying to attain stability. Mother's brief at 21. Again, we disagree. It is beyond peradventure that A.N.L.'s safety is paramount, and if Mother was unable or unwilling to secure a safe residence for her daughter, then the responsibility lies with Mother. Although Mother is accurate in stating that she moved to several homes, she ignores the fact that she persistently failed to address CYS's safety concerns. As we outlined *supra*, Mother either refused to provide the necessary information about her housemates to allow CYS to perform the required investigation or she insisted upon living with a paramour whose criminal record presented a safety risk. Thus, while Mother opines that "she changed her living situation on several occasions in an effort to eliminate the [a]gency's concerns," her argument disregards that she neglected to ensure A.N.L.'s safety in any of those residences. *Id*. at 22. Hence, it was Mother's half-hearted efforts, rather than CYS's safety concerns, that placed her in an untenable position. *Id*. at 22.

Mother also assails the finding that she neglected to maintain a relationship with A.N.L. She contends that her transportation was unreliable for the majority of this case and stresses that once CYS agreed to assist her with transportation to visitations with A.N.L. after 2015, her attendance improved. Once more, Mother's *post hoc* examination of her struggles utterly ignores the fact that, even considering her belated efforts to attend visitations consistently during the end of 2015, she still attended less than fifty percent of the scheduled visitations with her daughter throughout the child's placement.

The final aspect of our review of the statutory grounds to terminate Mother's parental rights concerns the needs and welfare analysis under 2511(b). While Mother does not level any specific objection to this aspect of the orphans' court's determination, we address it in an abundance of caution and find that the orphans' court did not abuse its discretion in concluding that terminating Mother's parental rights would best serve A.N.L.'s developmental, physical, and emotional needs. Stated succinctly, the record bears out that, while Mother and A.N.L. have not had any contact since February 2015, A.N.L. continues to thrive in the anticipated pre-adoptive foster home where she has resided since August 2014.

Finally, we address Mother's contention that the trial court erred in overruling her hearsay objection to Ms. Patterson's testimony about Mother's discharge from Stepping Stone during the spring of 2015. Recall that

Mother asserts that the testimony was a classic example of double hearsay. She continues that, while the CYS record that formed the basis of Ms. Patterson's testimony was subject to the business record exception under Pa.R.A.P. 803(6), the information in the letter from Stepping Stones to CYS constituted an additional level of hearsay that requires an independent exception to the hearsay doctrine.[2] She entreats this Court to remand the

_____

[2] As it relates to business records, the Pennsylvania Rules of Evidence provide the following exception to the rule against hearsay:

> ***Records of a Regularly Conducted Activity***. A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

matter for additional proceedings where CYS would be required "to call witnesses with first-hand knowledge concerning Mother's treatment" and subject those witnesses to cross-examination. Mother's brief at 29. No relief is due.

Our standard of review as to a trial court's evidentiary ruling well settled. "A trial judge has considerable latitude in determining the scope of cross-examination and his determination will not be reversed in the absence of an abuse of discretion unless a party suffers an obvious disadvantage." *Majczyk v. Oesch*, 789 A.2d 717, 726 (Pa.Super. 2001) (*en banc*). We will not award a new trial "merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake." *Knowles v. Levan*, 15 A.3d 504, 507 (Pa.Super. 2011).

This Court has consistently held that Rule 803(6) does not subsume information in a business record that was provided by a third-party. We recently confronted this issues in *Commonwealth v. Savage*, 2017 PA Super 57 (Pa.Super. 2017), and held that a child-victim's statement to his CYS caseworker that his mother, rather than the defendant, had slapped him were not admissible under Rule 803(6) even though the child's statement was memorialized in a CYS report. In reaching this conclusion, we first explained, "Where a business record that would otherwise be admitted as an exception to the hearsay rule itself contains hearsay, it is double hearsay[,

- 15 -

and] [t]he underlying hearsay must also qualify as a hearsay exception in order for the trial court to properly admit into evidence the business record." ***Id***. at *4 (citations omitted).

Applying that well-ensconced principle to the facts of the criminal case before it, the ***Savage*** Court reasoned that the exculpatory out of court statements that the defendant sought to introduce through the CYS report "originated from a source outside of CYS and, thus, are not covered by the business records exception to the hearsay rule just because the statements were contained in a report that CYS prepared." ***Id***. at *4. As the defendant failed to assert an independent exception specific to the child's statements to his caseworker, we held that the trial court did not err in finding the statement inadmissible even though the CYS report fell within the business record exception outlined in Rule 803(6).

While the principle we applied in ***Savage*** would appear to apply equally in the case at bar, we need not address the merits of Mother's argument because any error in admitting evidence of Mother's inability to complete the Stepping Stone treatment program is harmless in light of the force of the properly admitted evidence about her failure to address her substance abuse issues. Indeed, in addition to the challenged reference to the Stepping Stones program, Mother stipulated to the fact that she was unsuccessfully discharged from at least one program during the two years that her daughter has been in CYS placement and the testimony reveals that

she failed to complete treatment in two others. *See e.g.*, N.T., 11/4/16, at 19, 60 (stipulation regarding failure to complete Pathway to Recovery); *id*. at 64 (testimony regarding failure to complete A Better Today during summer 2015); *id*. at 82, 128 (neglected follow-up counseling following discharge from 21-day inpatient at Marworth during June 2015). Thus, insofar as any putative error in admitting Ms. Patterson's testimony about Mother's failure to complete the Stepping Stones program did not affect the outcome of this case, it is harmless. *Knowles*, *supra* at 508 n.4. (harmless error does not warrant new trial, and error is harmless if it did not affect verdict).

Accordingly, for all of the foregoing reasons, we find that the trial court appropriately terminated Mother's parental rights under 23 Pa.C.S. §§ 2511(a)(1) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2017