J-S32025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ARLANDO PICKETT | |
| Appellant | No. 3484 EDA 2015 |

Appeal from the Judgment of Sentence October 26, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0011067-2012

BEFORE:  GANTMAN, P.J., STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 17, 2017**

Appellant, Arlando Pickett, appeals from the October 26, 2015 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court") sentencing Appellant to three consecutive life sentences following a jury trial.  Appellant raises challenges to an improper opening statement, a right to counsel violation, and an evidentiary claim. Upon review, we affirm.

The trial court summarized the factual history of the matter as follows.

> The evidence adduced at trial established that on October 4, 2011, at or about 7:45pm, a vehicle approached the intersection of 8th Street and Indiana Avenue.  The occupants exited the vehicle armed with several weapons; they opened fire on the people standing outside the Indiana Minimarket, which is

_____

[*] Former Justice specially assigned to the Superior Court.

located at the northwest corner of the intersection. Fifty three pieces of ballistic evidence were recovered from the crime scene. The ballistic evidence came from three separate weapons—an AK-47, a 0.40 caliber, and a nine-millimeter. Four bystanders suffered injuries: Massandra English, Dyabe Talley and Craig Lassiter all died as a result of their injuries. The fourth victim Curtis McKnight, survived a gunshot wound to his thigh.

When the first officers arrived, they secured the crime scene. Of the 70-100 people at the crime scene when the officers arrived, none assisted police with a description of what had occurred or who had perpetrated the crime.

Sergeant Dayton Bennett arrived at the crime scene first, but when he received word that victims were being transported to Temple University Hospital, he left to intercept the vehicles and the victims at the hospital. Curtis McKnight arrived at the hospital in a friend's vehicle. Sergeant Bennett was able to converse with Mr. McKnight for roughly 25 to 40 seconds as Mr. McKnight was being placed on a gurney and whisked into the hospital for treatment. Mr. McKnight stated that he saw the shooter who was carrying the "big gun." Sergeant Bennett memorialized Mr. McKnight's description of the shooter and of the vehicle driven as Mr. McKnight was being stabilized on the gurney.

Mr. McKnight was questioned twice by homicide detectives. Both times, Mr. McKnight's answers were transcribed into formal statements. The first statement took place on October 5, 2011— a day after the crime. The second statement occurred on February 21, 2012. In his first statement, Mr. McKnight told detectives that he did not know the person he described as the shooter. During his second interview, Mr. McKnight was shown a photo array of eight individuals; he identified [Appellant] as the shooter.

Detective Henry Glenn testified regarding steps of the investigation that he and his former partner, Detective Cummings (first name not indicated), took. During the course of their investigation, the detectives became aware that Khalil Irby might have information regarding this murder. The detectives interviewed Khalil Irby. Based on the information obtained through that interview, the detectives were able to locate a photo of [Appellant]. This photo was included in the photo array

which was shown to Mr. McKnight during his second interview and was the basis of his identifying [Appellant] as the shooter.

**<u>Drug Activity</u>**

Between September and November of 2011, [Appellant] sold crack-cocaine to a confidential police informant on two separate dates. The first transaction took place on September 21, 2011. On that date, the police and the confidential informant ("CI") called [Appellant] requesting 64 grams of crack cocaine. [Appellant] told the CI that the crack cocaine needed to be cooked and that the order would take a few hours to fill. Narcotics surveillance units observed [Appellant] leave the area of G Street and Willard Street after the phone call; [Appellant] proceeded to a residence at 2854 Opal Street. Surveillance units watched [Appellant] enter the residence. When [Appellant] left this residence, he made contact with the CI and scheduled the delivery to take place at the corner of G Street and Allegheny Avenue. The CI consummated the transaction using prerecorded buy money.

According to Officer Charles Myers of the Narcotics Task Force, a second purchase was arranged utilizing the same CI; this transaction took palce on November 1, 2011. The CI contacted [Appellant] on that date and requested 250 grams of crack cocaine. After some time, [Appellant] met the CI near 2nd Street and Lehigh Avenue and delivered the requested crack-cocaine. Once police confirmed that the CI was in possession of the crack-cocaine, narcotics officers who had been surveilling [Appellant] initiated his arrest. The officers also executed a warrant on the residence located at 2854 Opal Street—the suspected cookhouse of the drugs from the first purchase. At 2854 Opal Street, [Appellant's] co-defendant, Andrew Johnson was arrested.

Mr. Johnson agreed to give information to the United States Attorney at two proffer sessions—one on April 24, 2012 and the second on May 23, 2012. Officer Myers was present for both sessions. Johnson offered the United States Attorney a motive for this murder. According to Johnson, [Appellant] and James Ellis were at the 2854 Opal Street cookhouse discussing a plot to obtain revenge for a shooting perpetrated on James Ellis. That shooting occurred on June 27, 2011.

According to Johnson, four men, including James Ellis and [Appellant], were discussing plans to retaliate (those discussions occurring within earshot of Johnson). Although the name of the intended target was never spoken, the location at which the intended target could be found was known. In Johnson's second proffer, the group discussed using an AK-47 during their proposed crime.

Trial Court Opinion, 09/14/16, at 2-5.

On September 26, 2012, the Commonwealth filed an information containing 28 counts against Appellant.[1] On November 6, 2012, Appellant requested a continuance for further investigation, which was granted the same date by the trial court. Appellant requested and was granted additional continuances for further investigation on December 6, 2012, January 24, 2013, March 7, 2013, March 28, 2013, May 2, 2013, May 30, 2013, June 13, 2013, and June 27, 2013. Due to a scheduling conflict, on January 27, 2014, the trial court ordered the trial continued for two weeks. On September 2, 2014, Appellant requested a continuance, which the trial court granted and scheduled the trial for June 1, 2015. On September 9, 2014, Appellant requested an additional continuance, which the trial court granted and scheduled the trial for October 13, 2015.

---

[1] These included four counts each of aggravated assault, conspiracy, carrying firearms in public in Philadelphia, possession of an instrument of crime (PIC), recklessly endangering another person (REAP), and simple assault, along with three counts of murder, and one count of criminal attempt murder. 18 Pa.C.S.A. §§ 2702(a), 903, 6108, 907, 2705, 2701(a), 2502, and 901, respectively.

On August 28, 2015, Appellant filed a motion to suppress the photographic identification of Appellant. The trial court granted a continuance request on September 1, 2015. On September 3, 2015, the Commonwealth filed a motion *in limine* to introduce prior bad acts. On September 30, 2015, at a pretrial hearing, appellate counsel appeared and requested to enter his appearance if a continuance was granted. The Commonwealth objected to the continuance, and the trial court sustained the objection.

Appellant filed a motion *in limine* on October 6, 2015, seeking the introduction of expert testimony regarding the accuracy and reliability of eyewitness testimony. On October 7, 2015, the trial court granted a motion to continue the trial to dispose of the pretrial motions. The trial court rescheduled the trial to a new date of October 14, 2015, one day after the previously scheduled trial date. On October 14, 2015, the trial court granted the Commonwealth's motion to introduce prior bad acts in part and denied in part, and denied Appellant's motion to suppress.

The trial commenced on October 16, 2015, and testimony was presented on October 19-22, 2015. The jury retired for deliberation on October 23, 2015, and rendered a verdict on October 26, 2015. Appellant was convicted on all counts and was sentenced the same date to three

consecutive life sentences.[2]  On October 27, 2015, Appellant, through appellate counsel,[3] filed post-sentence motions, which the trial court denied without a hearing on October 28, 2015.  On November 2, 2015, trial counsel filed a motion to withdraw as counsel, which the trial court granted on November 4, 2015.  Appellant filed a timely notice of appeal on November 10, 2015.  On January 8, 2016, the trial court directed Appellant to file a concise statement of matters complained of on appeal.  The trial court granted Appellant an extension to file his concise statement on January 22, 2016.  On February 10, 2016, Appellant filed his concise statement and the trial court issued a Pa.R.A.P. 1925(a) opinion on September 14, 2016.

Appellant raises three issues on appeal, which we quote verbatim.

[I.] Did the trial court commit reversible error by permitting the Commonwealth to refer to Irby in the prosecutor's opening speech and then by overruling an objection to testimony that referenced Irby?

[II.] Did the trial court commit an abuse of discretion and violated Appellant's Sixth Amendment right to counsel of his choicewhen [(sic)] it denied Appellant's motion to

---

[2] Appellant was sentenced on three counts of murder of the first degree, criminal attempt murder, conspiracy-murder of the first degree, and PIC.

[3] Appellate counsel entered his appearance following the trial court sentencing Appellant.  Appellate counsel conditionally entered his appearance at the September 30, 2015 pretrial conference predicated on the condition that the matter be continued.  As the trial court denied the continuance, appellate counsel entered his appearance when he filed a post-sentence motion on Appellant's behalf.

permit Gregory Pagano, Esquire to represent Appellant at trial?

[III.] Did the trial court commit an abuse of discretion by permitting the Commonwealth to introduce evidence relating to Appellant's involvement with drugs?

Appellant's Brief at 3.

Appellant's first argument is a challenge to the Commonwealth's opening argument referencing Khalil Irby. Our Supreme Court has held "that to preserve for appellate review an objection relating to the opening or closing address of opposing counsel, the objection must be specific and brought to the trial judge's attention as soon as is practical." *Commonwealth v. Sanchez*, 82 A.3d 943, 969-70 (Pa. 2013). As Appellant is attempting to raise the issue for the first time in his Pa.R.A.P. 1925(b) statement, this issue is waived. Moreover, insofar as it is not waived, it is a hearsay challenge to the testimony of Detective Glenn regarding his interaction with Khalil Irby.

"When reviewing a trial court's decision regarding the admissibility of evidence, we use an abuse of discretion standard and will only reverse 'upon a showing that the trial court clearly abused its discretion.'" *Commonwealth v. Savage*, 157 A.3d 519, 523 (Pa. Super. 2017) (quoting *Commonwealth v. Schoff*, 911 A.2d 147, 154 (Pa. Super. 2006) (additional citations omitted)).

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is

overridden or misapplied or the judgment exercise is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Schoff*, 911 A.2d at 154 (quoting ***Commonwealth v. Levanduski***, 907 A.2d 3, 13-14 (Pa. Super. 2006) (*en banc*)).  Appellant argues the trial court erred by admitting the following testimony as hearsay.

Q:  At some point, though, during those interviews, did you learn of someone who may have seen what happened?

A:  Yes.

Q:  And who was that individual?

A:  His last name is Irby.

Q:  And Khalil is his first name?

A:  Yes, he was.

Q:  After you interviewed Mr. Irby, did you want to speak with any of the previous witnesses again?

A:  Yes.

Q:  And who was that?

A:  That was Curtis McKnight.

Q:  After you interviewed Mr. Irby, did you have at this point photographs that you wanted to show to Mr. McKnight to see if he could I.D.?

A:  Yes.

Q:  So after the after you interviewed Irby, you were able to put together what?

A:  A photo array.

N.T. Trial 10/21/15, at 60-61 (sic). This argument is meritless because the information adduced at trial was not introduced for the truth of the matter asserted. **See** Pa.R.E. 801(c). Moreover, even if this testimony is hearsay, it is descriptive of the course of investigation; thus, it was admissible. **See Commonwealth v. Johnson**, 42 A.2d 1017, 1035 (Pa. 2012) (citations omitted). Therefore, the trial court did not abuse its discretion in admitting this evidence. Appellant's claim fails.

Appellant's second claim is that the trial court violated his Sixth Amendment right to counsel by denying his continuance request to replace trial counsel with appellate counsel two weeks prior to trial.

> [T]he right to counsel is guaranteed by both the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution. In addition to guaranteeing representation of the indigent, these constitutional rights entitled an accused "to choose at his own cost and expense any lawyer he may desire." **Commonwealth v. Novak**, 395 Pa. 199, 213, 150 A.2d 102, 109, *cert denied*, 361 U.S. 882, 80 S.Ct. 152, 4 L.Ed.2d 118 (1959). The right to "counsel of one's choosing is particularly significant because an individual facing criminal sanctions should have great confidence in his attorney." **Moore v. Jamieson**, 451 Pa. 299, 307-08, 306 A.2d 283, 288 (1973).
>
> We had held, however, that the constitutional right to counsel of one's choice is not absolute. **Commonwealth v. Robinson**, 468 Pa. 575, 592-93 & n. 13, 363 A.2d 665, 674 & n. 13 (1976). Rather, "the right of the accused to choose his own counsel, as well as the lawyer's right to choose his clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice." **Id.** at 592, 364 A.2d at 674 (internal quotations omitted). Thus, this Court has explained that while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably "clog the machinery of justice

- 9 -

or hamper and delay the state's efforts to effectively administer justice." ***Commonwealth v. Baines***, 480 Pa. 26, 30, 389 A.2d 68, 70 (1978). At the same time however, we have explained that " 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.'" ***Robinson***, 468 Pa. at 593-94, 364 A.2d at 675 (quoting ***Ungar v. Sarafite***, 3476 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964)).

***Commonwealth v. Prysock***, 972 A.2d 539, 542 (Pa. Super. 2009) (quoting ***Commonwealth v McAleer***, 748 A.2d 670, 673-74 (Pa. 2000)).

Noting the matter had been continued multiple times at the Appellant's request before, the trial court denied the motion. Our standard of review for a denial of a motion to continue is to determine whether the trial court abused its discretion. ***Commonwealth v. Ross***, 57 A.3d 85, 91 (Pa. Super. 2012) (citation omitted).

Upon review, the matter had been continued numerous times and had been pending for almost three years before the case went to trial. The trial court noted that Appellant "had ample time to secure the counsel of his choosing." Trial Court Opinion, 9/14/16, at 11. Unlike in ***Prysock***, where the trial court had appointed counsel one month prior to the scheduled trial date when it denied a continuance request, in the matter *sub judice*, trial counsel was appointed almost three years prior to trial. The trial court found Appellant's request dilatory, and was an attempt to "clog the machinery of justice." ***Id.*** As the matter had been pending for almost three years, the trial court had scheduled the trial date almost a year in advance, and Appellant's request came mere weeks before the date of trial, we find the

trial court did not abuse its discretion when it denied his continuance request. Appellant's claim fails.

Finally, Appellant challenges the introduction of evidence related to Appellant's drug activity. As discussed above, questions concerning the admission of evidence are left to the discretion of the trial court, and we will not reverse absent an abuse of that discretion. *See Commonwealth v. Sitler*, 144 A.3d 156, 162 (Pa. Super. 2016). It is well established that

> evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa. R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Sitler*, 144 A.3d at 163 (quoting *Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009) (additional citation omitted)). In order for evidence of a prior bad act to be admissible to establish motive, "there must be a specific 'logical connection' between the other act and the crime at issue which establishes that the that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances.'" *Commonwealth v. Cox*, 115 A.3d 333, 337 (Pa. Super. 2015) (quoting *Commonwealth v. Ross*, 57 A.3d 85, 100 (Pa. Super. 2012) (*en banc*), *appeal denied*, 72 A.3d 603 (Pa. 2013)). Furthermore, "when examining the potential for undue prejudice, a cautionary instruction

may ameliorate the prejudicial effect of the proffered evidence."
***Commonwealth v. Hairston***, 84 A.3d 657, 666 (Pa. 2014) (citing Pa.R.E.
404(b) cmt; ***Commonwealth v Dillon***, 925 A.3d 131, 141 (Pa. 2007)).

In the matter *sub judice*, the trial court permitted the testimony of
Andrew Johnson and his participation in a drug operation with Appellant.
This was done to establish Appellant's motive, namely, that Andrew Johnson
was at the drug operation's headquarters, was aware of Appellant's access
to weapons, his reason for the shooting,[4] and his plan.  Unlike in the cases
cited by Appellant, the information pertaining to the drug operation was
relevant to establish the witness's credibility regarding Appellant's motive.

Furthermore, "Pennsylvania recognizes a *res gestae* exception,
permitting the admission of evidence of other crimes or bad acts to tell 'the
complete story.'  "Such evidence may be admitted, however, 'only if the
probative value of the evidence outweighs its potential for unfair prejudice.''
***Commonwealth v. Hicks***, 151 A.3d 216, 226 (Pa. Super. 2016) (citing
***Commonwealth v. Hairston***, 84 A.3d 657, 665 (Pa. 2014)).  In ***Hicks***, the
trial court found that the testimony presented regarding a different shooting
than the underlying case "provided the jury with the full history of the
interaction among Appellant, his cohorts, and the victims."  ***Id.*** at 226.  This
Court found that the events "provided a background by which the jury could

_____

[4] Revenge for a previous shooting incident.

weigh [the witness's] testimony and his delay in identifying [a]ppellant as the perpetrator of the crimes." *Id.* Similarly, in the matter *sub judice*, the testimony of Andrew Johnson permitted the Commonwealth to tell the whole story of the shooting. Namely, that Johnson and Appellant were part of the same drug operation, and while at the cookhouse, Johnson overheard Appellant planning the underlying shooting. Hence, this testimony had significant probative value which outweighed the potential for unfair prejudice. Upon review, the trial court did not commit an abuse of discretion when it permitted the evidence of Appellant's drug activity. Thus, Appellant's claim fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2017