J-S42042-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SPENCER LONG | : | |
| | : | |
| Appellant | : | No. 3075 EDA 2018 |

Appeal from the Judgment of Sentence Entered June 18, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001874-2016

BEFORE: PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED NOVEMBER 30, 2020**

Spencer Long ("Long") appeals from the judgment of sentence imposed following his conviction of attempted murder, aggravated assault, recklessly endangering another person, firearms not to be carried without a license, and carrying a firearm on public streets or public property in Philadelphia.[1] We affirm.

On December 18, 2015, at approximately 1:00 p.m., Philadelphia Police received a report of a shooting victim at Roxborough Hospital. The victim, Marquis McClain ("McClain"), told police that he had been shot in the buttocks in the area of North 27th and West Thompson Streets in Philadelphia.

---

[1] *See* 18 Pa.C.S.A. §§ 901(a), 2502, 2701(a)(1), 2705, 6106(a)(1), 6108.

Detective Michael Repici ("Detective Repici") was subsequently assigned to investigate the shooting. Detective Repici interviewed a witness, Terrence Jackson ("Jackson"), who was in the car with McClain at the time of the shooting. Jackson told Detective Repici that McClain had been arguing on the phone with someone known as "Little Spence" shortly before the shooting. Another witness, Tim Szerlik ("Szerlik"),[2] identified Long from a photo array.

Long was arrested on December 31, 2015. The arresting officers recovered two cell phones during the arrest—one iPhone, and one black LTE cell phone. Long confirmed that both phones belonged to him, but indicated that the iPhone was not functioning at that time. Long also confirmed his cell phone number for the LTE phone.

Relevantly, on the same date, Detective Repici applied for a search warrant ("Warrant Number 192914"). The search warrant Application identified the "premises and/or location to be searched" as "Metro PCS cell phone number of 267[-]499[-XXXX]. 2250 Lakeside Blvd., Richardson, TX 75082." Defendant's Exhibit 3 (Application for Search Warrant and Affidavit 192914), 12/31/15. Specifically, the Application sought "[i]ncoming/outgoing call records, duration time and cell site tower location, text messages and

_____

[2] Szerlik, a construction worker, was working in the area of 27th and Thompson Streets at the time of the shooting. *See* N.T. (Jury Trial), 4/21/17, at 50. Approximately 45 minutes to an hour after the shooting, Szerlik called 911 to report the incident. *Id.* at 77; *id.* (wherein the audio recording of the 911 call was played in open court). Szerlik later identified Long again during the jury trial. *Id.* at 55-56.

photos for the cellular phone number of 267-449-[XXXX] from 12-16-15 to present time." *Id.* In the supporting Affidavit of Probable Cause, Detective Repici alleged that the cell phone number belonged to Long, and he was seeking a search warrant "in an effort to establish that [Long] and [McClain] had contact on the day of the shooting either via text or phone call." *Id.* Warrant Number 192914 was sent to Metro PCS for call records. *See* N.T. (Suppression), 1/19/17, at 25, 35. Call records obtained from Metro PCS revealed "numerous" phone calls between McClain and Long on the date of the shooting. *Id.* at 20.

On January 14, 2016, Detective Repici applied for a search warrant ("Warrant Number 192930"). The search warrant Application identified the same "premises and/or persons to be searched[,]" *i.e.*, Long's cell phone number. Commonwealth's Exhibit 40 (Application for Search Warrant and Affidavit 192930), 1/14/16. The Application sought "[s]ubscriber information, incoming/outgoing call records, with duration, time and location of cell site towers, text messages, photos and videos for the cell number of 267-499-[XXXX] from 12-12-15 to present." *Id.* Detective Repici set forth the same supporting information in the Affidavit of Probable Cause. *Id.* Detective Repici provided Warrant Number 192930, as well as the phone itself, to a District Attorney's Office forensic examiner, who performed a cell phone data "dump." *See* N.T. (Suppression), 1/19/17, at 25-26. The "dump" provided

investigators with photographs, calls, text messages, and videos. **See id.** at 26.

On the same date, Detective Repici applied for an additional search warrant ("Warrant Number 192931") identifying the "premises and/or persons to be searched" as Metro PCS cell phone number of 267-438-[XXXX], 2250 Lakeside Blvd., Ricjardson [*sic*], TX 75082." Defendant's Exhibit 2 (Application for Search Warrant and Affidavit 192931), 1/14/16. The Application sought "[s]ubscriber information, incoming/outgoing cell records with duration, time and location as well as cell site tower locations, text messages, photos and videos for the number of 267-438-[XXXX] from 12-12-15 to present time." **Id.** In the supporting Affidavit, Detective Repici identified the cell phone number as belonging to Long's girlfriend, Aaliya Porterfield ("Porterfield"),[3] and alleged that "[t]he girlfriend was interviewed and relayed that [McClain] was calling her cell phone[,] arguing with [Long]." **Id.**

On February 5, 2016, a grand jury indicted Long on attempted murder and related offenses. Based on the indictment, the Commonwealth charged Long via Criminal Information.

---

[3] Porterfield had been romantically involved with both Long and McClain. **See** N.T. (Jury Trial), 4/21/17, at 19 (wherein Porterfield stated, "They are all my boyfriends.").

Long filed an Omnibus Motion, including, *inter alia*, a Motion to suppress on August 8, 2016. Specifically, Long sought suppression of all physical evidence and identification evidence, and argued that his arrest was illegal; the search was conducted without probable cause and without a warrant; and he was subjected to an unnecessarily suggestive identification procedure. Following a suppression hearing on January 19, 2017, the trial court denied Long's Motion to suppress, citing the doctrine of inevitable discovery.[4]

Several Motions *in limine* followed. Relevantly, the trial court permitted the Commonwealth to introduce photographs of a gun found on Long's cell phone, as well as text messages concerning Long's purchase of a .45 caliber gun.[5]

Following a jury trial in April 2017, Long was convicted of the above-

---

[4] Long also filed a *pro se* Motion to Suppress on February 21, 2017. From the docket, it does not appear that the trial court took action on the *pro se* Motion.

[5] On November 27, 2015, Long sent the following text message to an individual identified only as "Charlie" in his cell phone: "Yo bro I just grabbed a join last night 45 nice 60 bones bro clean lol." Commonwealth's Exhibit 42C (misspellings in original). The following day, Long sent another message, which included a photograph of the gun, with a message that said "Yea 70$" [*sic*]. Commonwealth's Exhibit 42D; **see also** N.T., 4/26/17, at 5 (wherein Commonwealth's Exhibit C42 was admitted into evidence at trial).

mentioned offenses.[6]  On June 18, 2018, the trial court sentenced Long to a term of 10 to 20 years in prison, with credit for time served, for the attempted murder conviction.[7]  For the remaining convictions, the trial court entered a determination of guilt without further penalty.  Additionally, the trial court directed Long to receive mental health treatment.  Long filed a timely Post-Sentence Motion, which was denied by operation of law.  Long filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Long now raises the following issues for our review:

A. Did the lower court err in denying [Long's M]otion to suppress information, phone records, text messages, photographs, and other evidence seized from a black LTE cell phone[,] in violation of the 4th Amendment of the United States Constitution[,] and the broader independent protections of Article 1, Section 8 of the Pennsylvania Constitution because:

1. The police lacked a warrant which authorized the search of a physical phone or its contents[,] because [W]arrant [N]umber 192930 is not sufficiently particularized and does not permit the search of the physical phone, but rather[,] only a search of the phone company's records;

2. Even if a valid warrant existed authorizing a search of the phone, the police lacked a warrant to search for and seize

---

[6] Throughout the year following Long's conviction, sentencing was deferred on multiple occasions, as Long was deemed incompetent to proceed to a sentencing hearing.  The trial court issued several Criminal Involuntary Mental Health Commitment Court Orders to defer sentencing, and Long remained in the Detention Center's Forensic Unit.  On May 14, 2018, Long was deemed competent, and the trial court scheduled a sentencing hearing.

[7] Long's aggravated assault and attempted murder convictions merged for sentencing purposes.

the entire contents of the phone, outside of the warrant's specified scope; and

3. The trial court erred in finding that the discovery of the evidence was inevitable?

B. Did the trial court improperly permit Edward Dixon [("Dixon")] to testify that [] McClain told him that "Spencer shot me" because the out[-]of[-]court statement did not satisfy any hearsay exception?

Brief for Appellant at 3-4.[8]

In his first claim, Long argues that the trial court erred in denying his Motion to suppress, which we will address separately. First, Long claims that Warrant Number 192930 was insufficiently particular to authorize the search of his phone. *Id.* at 24-25. According to Long, the Warrant "does particularly describe the place or thing to be searched—the records of Metro-PCS relating

_____

[8] On November 13, 2018, Long filed a Motion for Extension of Time to file a supplemental concise statement, wherein counsel averred that he had ordered, but not yet received, the complete transcripts from the suppression hearing, trial, and sentencing. From the docket, it is unclear whether the trial court granted Long leave to file a supplemental concise statement. Long filed a Supplemental Concise Statement on August 2, 2019, which included the addition of the second issue raised in his appellate brief. We note that the transcript order was not attached to the Motion for Extension of Time, and the docket does not reflect when the transcripts were filed. *See* Pa.R.A.P. 1925(b)(2)(ii) (providing that "[i]f a party has ordered but not received a transcript necessary to develop the [s]tatement, the party may request an extension of the deadline to file the [s]tatement until 21 days following the date of entry on the docket of the transcript…. The party must attach the transcript purchase order to the motion for the extension."). Nevertheless, as the trial court addressed Long's second claim in its Opinion, we decline to deem the issue waived on this basis.

to cell phone number 267-499-[XXXX]. … However, the police executed that [W]arrant upon an item and place that was not specified in the [W]arrant….” *Id.* at 25, 28. Long asserts that because the "place" to be searched was described using the phone number, officers could not search the phone itself. *Id.* at 26. Long argues,

> [a] plain reading of [Warrant Number 192930] in no way suggests to a reasonable reader that the thing being searched is the contents of a physical phone. It says clearly that the search is of a phone number, which belongs to the carrier and is bought or rented by the user. The phone belongs to the user.

*Id.* at 27.[9]

We adhere to the following standard of review:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the

_____

[9] The Commonwealth argues that Long waived this claim because, during the suppression hearing, Long "led the court to believe that he was not moving to suppress any of the cellular evidence that *had been transmitted* by his phone but only that which *had not been transmitted*." Commonwealth's Brief at 22 (emphasis in original); *see also id.* at 22-25. However, Long's argument in that regard was based on his assertion that Warrant Number 192930 should have applied to the carrier (which purportedly would have records of transmitted data), rather than the phone itself. We decline to deem this issue waived.

suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation, brackets, and ellipses omitted).

The Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized. This requirement is meant to prevent general searches and ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Along those lines, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found.

*Commonwealth v. Turpin*, 216 A.3d 1055, 1063-64 (Pa. 2019) (internal citations, quotation marks and brackets omitted). As this Court has explained,

[i]t is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched…. The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad. These are two separate, though related, issues. A warrant unconstitutional for its lack of particularity authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize. This will result in the general "rummaging" banned by the Fourth Amendment. A warrant unconstitutional for its overbreadth authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation. … An overbroad warrant is unconstitutional because it authorizes a general search and seizure.

*Commonwealth v. Orie*, 88 A.3d 983, 1002-03 (Pa. Super. 2014) (citation and brackets omitted); *see also id.* at 1003 (stating that the particularity requirement of Article I, Section 8 of the Pennsylvania Constitution is more

stringent than that of the Fourth Amendment, and therefore, "if the warrant is satisfactory under the Pennsylvania Constitution it will also be satisfactory under the federal Constitution."). Further, "the Pennsylvania Supreme Court has instructed that search warrants should be 'read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice.'" *Id.* at 1003 (quoting *Commonwealth v. Rega*, 933 A.2d 997, 1012 (Pa. 2007). "[W]here the items to be seized are as precisely identified as the nature of the activity permits … the searching officer is only required to describe the general class of the item he is seeking." *Commonwealth v. Kane*, 210 A.3d 324, 333 (Pa. Super. 2019) (citation and quotation marks omitted). Specifically, regarding electronic devices, "a warrant may permit the seizure of electronic equipment so long as the search of the equipment is limited to looking for evidence of the specific crimes that the police had probable cause to believe the defendant committed." *Commonwealth v. Green*, 204 A.3d 469, 481 (Pa. Super. 2019).

Here, our review discloses that Warrant Number 192930 identified the "premises to be searched" as Long's cell phone, *i.e.*, "Metro PCS cell phone number of 267-499-[XXXX]. 2250 Lakeside Blvd., Richardson, TX 75082." Commonwealth's Exhibit 40 (Application for Search Warrant and Affidavit 192930), 1/14/16. In the search warrant Application, Detective Repici

- 10 -

identified the "owner" of the items to be searched, with the designation "(subscriber)" listed behind Long's cell phone number. *Id.* Further, the Application specified the following items to be searched: "Subscriber information, incoming/outgoing call records, with duration, time and location of cell site towers, text messages, photos and videos for the cell number of 267-499-[XXXX] from 12-12-15 to present." *Id.*[10] Additionally, in the Affidavit of Probable Cause, Detective Repici avers that Jackson (identified in the Affidavit as "T.J.") told detectives that McClain was arguing with someone by the name of "Little Spence" shortly before the shooting. *Id.* Detective Repici also averred that the identified phone number belongs to Long, and that Warrant Number 192930 requested the described information to "establish that [Long] and [McClain]" had contact on the date of the shooting either via text or phone call." *Id.*

The trial court concluded that Warrant Number 192930 was supported by probable cause, and the information requested "was appropriate for extraction from the cell[ ]phone." Trial Court Opinion, 11/20/19, at 9. The court also concluded that the Warrant specifically described the item to be seized, *i.e.*, Long's cell phone. *Id.*; *see also id.* at 10 (stating that "[Detective

---

[10] By contrast, Warrant Number 192914, which was served on Metro PCS, the carrier, does not include "subscriber information" in its description of "items to be searched." *See* Defendant's Exhibit 3 (Application for Search Warrant and Affidavit 192914), 12/31/15.

Repici] could not state with any greater specificity where evidence of the shooting could be stored in the phone.").

The trial court's findings are supported by the record. The Affidavit of Probable Cause specifically sought call records, text messages, photographs and videos from Long's cell phone. *See* Commonwealth's Exhibit 40 (Application for Search Warrant and Affidavit 192930), 1/14/16. During the suppression hearing, Detective Repici explained that a phone "dump" would retrieve "[e]verything physical out of the phone: Texts, call logs, subscriber information." N.T. (Suppression), 1/19/17, at 26. Detective Repici testified that he took Warrant Number 192930 and the cell phone to the District Attorney's Office for inspection. *Id.* at 26, 41. According to Detective Repici, he has never received text messages directly from a cell phone carrier. *Id.* at 39.

Additionally, Devon Campbell ("Campbell"), a mobile device forensic examiner at the Philadelphia District Attorney's Office, explained that when her lab receives a mobile device for examination, it is typically accompanied by a search warrant or consent form. *Id.* at 64. Campbell testified that text messages, photos, and videos cannot be obtained through a carrier. *Id.* at 69. Campbell explained that she uses a forensic tool to obtain data in a "dump," and that everything on the cell phone is transferred to a computer during the process. *Id.* at 71-72; *see also id.* at 74 (wherein Campbell stated that "there is no way to limit what you get from that dump."). According to

Campbell, at the time data is downloaded in a "dump," there is no way to determine when the texts, photographs, or videos were created. *Id.* at 73. However, Campbell testified that after a "dump" has been completed, she can create a report using a specified time period. *Id.* at 75. The report returned to investigators is based on the date the file was created. *See id.* at 76-77; *see also id.* at 77-78 (wherein Campbell testified, "[W]hen we [the mobile forensic lab] are given a search warrant with a date timeline, to the best of our abilities, we look at what the phone dump has given us and then only give back active artifacts that were found through that timeframe.").

We recognize that it may have been more prudent for Detective Repici to identify the cell phone's serial number or other identifying information, as opposed to simply referencing the provider information in the search warrant Application. Nevertheless, we cannot agree with Long's assertion that Warrant Number 192930 was insufficiently particular to support a search of the phone's contents, as opposed to carrier records. The specific items identified in Warrant Number 192930 make clear that Detective Repici intended to search the contents of the phone. *See Kane*, *supra* (explaining that a description of the general class of items to be searched may be sufficient). The suppression hearing testimony of both Detective Repici and Campbell bolster this conclusion. Because the trial court's conclusions are sound, and we discern no error in its application of the law, Long is not entitled to relief on this claim.

Second, Long asserts that even if Warrant Number 192930 is valid, the search extended beyond the scope of the warrant. Brief for Appellant at 29. Specifically, Long points to photographs and text messages, stored in November 2015, which the Commonwealth introduced regarding Long's purchase of a gun. *Id.* Long argues that because Warrant Number 192930 limited the search to items "from 12-12-15 to present[,]" the texts and photographs about the gun were outside the scope of the warrant. *Id.* Long contends that police cannot be permitted to "download a phone's entire contents and then rummage through every file, app, and photograph with complete disregard to the warrant's limitations…." *Id.* at 34.[11]

Here, Warrant Number 192930 specifically sought "[s]ubscriber information, incoming/outgoing call records, with duration, time and location of cell site towers, text messages, photos and videos for the cell number of 267-499-[XXXX] **from 12-12-15 to present**." Commonwealth's Exhibit 40 (Application for Search Warrant and Affidavit 192930), 1/14/16 (emphasis added). The trial court determined that the Commonwealth's use of evidence

---

[11] From the record, it is unclear what evidence was included in the evidence report provided to investigators, or when the Commonwealth received the challenged text messages and photographs. The Commonwealth filed its Motion in *limine* seeking to introduce this evidence on April 13, 2017. We further observe that the certified record does not contain a copy of the transcripts from April 18, 2017, hearing, during which the Commonwealth addressed its Motion in *limine*.

- 14 -

created *prior to* December 12, 2015 (*i.e.*, pictures of Long's gun in his bedroom, and text messages concerning his purchase of the gun) did not constitute a search and seizure outside the scope of the warrant. *See* Trial Court Opinion, 11/20/19, at 10-11. Pointing to Campbell's testimony, the trial court reasoned that "it was impossible to limit the data extracted from [Long's] cell[ ]phone…." *Id.*[12]

_____

[12] We note our disagreement with the trial court's characterization of Campbell's testimony. During the suppression hearing, Campbell testified that, during the phone "dump," all of the phone's data will be retrieved, and cannot be limited. *See* N.T. (Suppression), 1/19/17, at 73, 74. However, significantly, Campbell testified that after the forensics lab completes the "dump," the data retrieved can be identified by the date it is created, and the lab can create an evidence report based on a date specified in a search warrant. *See id.* 74-75. Campbell specifically explained as follows:

> [Campbell]: So, in the forensic software that we use, it talks directly to the phone in a forensics manner and there is no way to limit what you get from that dump. We dump the phone, the search says a certain date. We give you all that information that we can find on the phone from that date. So, yes, I can see when pictures were taken, messages were sent, phone calls were made and stuff like that. So, yes, I can see from that. I can also look on the phone, myself, but in the preservation of evidence, we do not like to directly look at the phone. We like to use the forensic copy that is made from the phone and use that as what we show the detectives or [Assistant District Attorneys]. And then that is also given to defense counsel or whoever else needs a copy of it.
>
> [Assistant District Attorney]: When you actually dump the entire phone, you then create a report and the report only includes the evidence that is from the date that's specified on the warrant?
>
> [Campbell]: Yes, that is -- when they ask for a certain date, that is what I get back.

*Id.*

- 15 -

Moreover, the trial court concluded that any error in its admission of the challenged evidence was harmless. *Id.* at 11. The trial court stated as follows:

Though the dates of [Commonwealth's Exhibit] 42-C [a text message from Long's phone indicating that he purchased a gun] and –D [a text message with included video, which appears to show a gun in Long's bedroom] were outside the scope of the search warrant, [Long] was not unfairly prejudiced. Neither piece of evidence was directly related to the events, which occurred on the date of the shooting. In the context of the week-long trial, and in consideration of all of the direct and circumstantial evidence, admission of the two (2) pieces of evidence was not unfairly prejudicial to [Long] and was, at best, harmless error.

*Id.*

The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial. …. Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hairston*, 84 A.3d 657, 671-72 (citations, quotation marks and paragraph breaks omitted).

The record supports the trial court's determination that any error in admitting the evidence pre-dating Warrant Number 192930's parameters was

harmless, in light of the other evidence supporting the guilty verdict.[13] The Commonwealth presented the testimony of Porterfield, who stated that she was with Long until approximately 11:00 a.m. on the day of the shooting, when she dropped him off at the Johnson Projects, and that she picked Long up again at approximately 12:30 p.m. *See* N.T. (Jury Trial), 4/21/17, at 6-7. Porterfield testified that, at some time that day, while she was with Long, McClain called her and told her that he had been shot. *See id.* at 11-12.

The Commonwealth also introduced Porterfield's and McClain's phone records (including cell tower use), which display numerous phone calls between Porterfield and Long, Porterfield and McClain, and Long and McClain, on December 18, 2015. *See* Commonwealth's Exhibits C-68A (McClain's 12/18/15 Phone Calls (Short Version)), C-69A (Porterfield's 12/18/15 Phone Calls (Short Version)); *see also* N.T. (Jury Trial), 4/25/17, at 94-114 (wherein Detective Anthony Vega—an FBI Violent Crimes Task Force member detailed to the Philadelphia Police Department, and an expert in historical cell site analysis—explained the information contained in the phone records); N.T. (Jury Trial), 4/26/17, at 5 (wherein Commonwealth's Exhibits C-68A and C-69A were admitted into evidence).

---

[13] As Long does not challenge the sufficiency of the evidence supporting the guilty verdicts, we decline to undertake a full sufficiency analysis. Rather, we highlight herein key evidence supporting Long's convictions.

Further, Szerlik, who witnessed the shooting, testified at trial. Szerlik testified that he called 911, and gave a short statement to dispatch about the shooting. N.T. (Jury Trial), 4/21/17, at 77. Within the following week, Szerlik provided a witness statement to Detective Repici. *Id.* at 78-79. Szerlik testified that he had identified Long from a photo array. *Id.* at 80-82, 84. Additionally, Szerlik provided an in-court identification of Long. *Id.* at 55-56.

Thus, in light of the quantum of evidence supporting Long's guilty verdicts, any prejudicial effect of the challenged evidence was *de minimis*, and is unlikely to have contributed to the verdict. **See Hairston**, **supra**. Because the trial court's finding of harmless error is supported by the record, Long is not entitled to relief on this claim.

Long next argues that the trial court erred in applying the doctrine of inevitable discovery. Brief for Appellant at 35. Long argues that the trial court's application of the doctrine was premised on the violation of Long's **Miranda**[14] rights. *Id.* at 37. Instead, Long argues that because the search of his phone was not supported by a valid warrant, the doctrine of inevitable discovery cannot apply. *Id.* at 37-38.

---

[14] **See Miranda v. Arizona**, 384 U.S. 436 (1966). In its Opinion, the trial court states that "[t]here is no dispute that Detective Repici unlawfully obtained [Long's] cell[ ]phone number when the detective questioned him without first reading the **Miranda** rights." Trial Court Opinion, 11/20/19, at 6. The trial court then concluded that the police inevitably would have discovered Long's phone number based on their independent investigation. **See id.** at 7.

- 18 -

Initially, we observe that both Long's original and Supplemental Concise Statement include a claim that all data from Long's phone should have been suppressed "because the search was the fruit of a non-[**M**]*irandized* custodial interrogation and an involuntary statement…." Concise Statement, 11/13/18; Supplemental Concise Statement, 8/2/19. Long does not raise an argument pursuant to **Miranda** in his appellate brief. Thus, the trial court's analysis concerning the doctrine of inevitable discovery on this basis is not relevant to the instant appeal. Moreover, as we explained *supra*, the search of Long's phone was supported by a valid warrant. Long is therefore not entitled to relief on this issue.

In his second claim, Long contends that the trial court erred in admitting McClain's statement, made to Dixon,[15] that "Spencer shot me," under the excited utterance exception to the prohibition against hearsay. Brief for Appellant at 28. According to Long, "the Commonwealth presented no evidence to show that the statement was made as a spontaneous response to the excitement as opposed to a contemplated response made after calm reflection." *Id.* Long claims that McClain did not make the contested statement to Dixon until their second phone call, allowing him time for reflection. *Id.* at 41. Long also points to Dixon's testimony that, at the time

---

[15] Dixon was involved in a romantic relationship with McClain's mother. While Dixon is described as McClain's stepfather throughout the record, McClain testified that Dixon and his mother never married. **See** N.T. (Jury Trial), 4/21/17, at 123.

he made the statement, McClain "sounded a little playful[.]" *Id.* Long also argues that McClain made inconsistent statements throughout the investigation and during his trial testimony, which suggests that he is not trustworthy. *Id.* at 42.

"The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." ***Commonwealth v. Antidormi***, 84 A.3d 736, 749 (Pa. Super. 2014) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* (citation and quotation marks omitted).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Pa.R.E. 801. Hearsay is generally inadmissible, unless a specific, enumerated exception applies. Pa.R.E. 802; ***see also Commonwealth v. Savage***, 157 A.3d 519, 524 (Pa. Super. 2017). Pennsylvania Rule of Evidence 803(2) provides an exception to the rule against hearsay for excited utterances:

> **(2) Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition.

Pa.R.E. 803(2).

Additionally, "[t]here is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rule as an excited utterance." ***Id.***, cmt; ***see also Commonwealth v. Carmody***, 799 A.2d 143, 147 (Pa. Super. 2002) (stating that "there is no bright line rule regarding the amount of time that may elapse between the declarant's experience and her statement."). In considering whether a statement qualifies as an excited utterance, courts may consider

> 1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so. These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception. It is important to note that none of these factors, except the requirement that the declarant have witnessed the startling event, is in itself dispositive. *Rather, the factors are to be considered in all the surrounding circumstances to determine whether a statement is an excited utterance*.

***Commonwealth v. Keys***, 814 A.2d 1256, 1258 (Pa. Super. 2003) (emphasis in original; citations omitted). "The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." ***Id.***

Initially, we observe that the portion of the trial transcripts that include Dixon's testimony are not included in the certified record. ***See Commonwealth v. Metts***, 787 A.2d 996, 1003 (Pa. Super. 2001) (stating that "[i]t is [the a]ppellant's duty to provide a complete record to facilitate

meaningful appellate review."). We also note that the trial court summarized the relevant portion of testimony as follows:

> Ten (10) to fifteen (15) minutes after [] Dixon heard gunshots, [McClain] called him. (N.T., 04/24/17[,] at 45). [McClain] told [] Dixon, "[C]all my mom." *Id.* Approximately five (5) minutes later, [McClain] again called [] Dixon and said, "Spencer shot me." *Id.* at 46.

Trial Court Opinion, 11/20/19, at 13. The Commonwealth and Long each provide similar summaries in their appellate briefs.

Though we cannot fully evaluate Long's claim absent the relevant trial transcripts, we observe the trial court's conclusion regarding this issue. Specifically, the trial court noted that McClain made the second call to Dixon "merely fifteen (15) minutes after [Long] shot him[;]" McClain was bleeding and traveling to the hospital at the time he made the statement; and "there was no evidence that [McClain] spoke to anyone else." *Id.* at 13. The trial court therefore concluded that "[McClain's] statement was made so near the occurrence both in time and place as to exclude the likelihood that the statement emanated in whole or in part from [McClain's] reflective faculties." *Id.* Further, the trial court concluded that any error in permitting the challenged testimony was harmless. *Id.*

For the reasons set forth in response to Long's previous claim, we conclude that, even if Long had supplied us with a complete record and established that the trial court improperly admitted the challenged testimony, any such error would be harmless. The record reveals significant evidence to

- 22 -

support Long's convictions, including, *inter alia*, cell phone records and a witness identification. Thus, any prejudice resulting from the admission of Dixon's statement was *de minimis*, and unlikely to have contributed to the verdict. **See Hairston**, **supra**. Accordingly, we cannot grant Long relief on this claim.[16]

Judgment of sentence affirmed.


*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


Date: _11/30/2020_

_____

[16] To the extent that Long challenges McClain's credibility, we note that it is the exclusive province of the fact finder to make credibility determinations, and we will not reassess those determinations on appeal. **See Commonwealth v. Mack**, 850 A.2d 690, 693 (Pa. Super. 2004).