J-A19043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HAFIZ ANTONIO MYRICK | : | |
| | : | |
| Appellant | : | No. 1541 EDA 2020 |

Appeal from the Order Entered July 15, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000562-2019

BEFORE:   DUBOW, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JULY 15, 2022**

Appellant, Hafiz Antonio Myrick, appeals from the judgment of sentence imposed following his conviction of murder of the first degree, kidnapping, false imprisonment, firearm carried without a license, firearm carried without a license in Philadelphia, possession of an instrument of crime, and obstructing administration of law.[1]   We affirm Appellant's convictions but vacate the judgment of sentence and remand for resentencing.

The trial court summarized the evidence presented at trial as follows:

Before and during 2018, [Appellant] and [co-defendant] Khalil Johnson dealt drugs in the Tacony neighborhood of Philadelphia. During that time period, Shawn Carney, the decedent, regularly purchased drugs from [Appellant].  Carney, who was homeless,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 2901(a)(3), 2903(a), 6106(a)(1), 6108, 907(a), and 5101, respectively.

lived in a tent under I-95 around the area of Keystone Street and Longshore Avenue.

On the morning of July 11, 2018, [Appellant] began searching the bushes around Keystone Street and Longshore Avenue to find drugs he believed he had previously stashed there. When [Appellant] was unable to find the drugs, he asked his friend Lataja Powell if she knew where Carney was because [Appellant] believed that Carney had stolen [Appellant's] drug stash. When Powell was unable to tell [Appellant] where Carney was, [Appellant] told her that he needed to go the airport. Instead of going to the airport, [Appellant] drove around the Tacony neighborhood looking for Carney.

Later that same day, Powell encountered [Appellant] and Johnson at Disston Street and Torresdale Avenue. [Appellant] was sitting in his van and Powell got in to speak with him. [Appellant] showed Powell a blue bag filled with crack cocaine. [Appellant] then told Powell that "[h]e didn't take it. I found my shit. He didn't take it. . . I did something bad."

At roughly 4 p.m. on July 12, 2018, Carney's body was found by teenagers walking in Pennypack Park. According to the medical examiner, Carney had been shot three times in his torso and was killed by a single gunshot to the head. Carney also had numerous bruises and scrapes on his body.

On July 25, 2018, while in custody on an unrelated charge, [Appellant] placed a call to Matthew Kemp. During the conversation, Kemp told [Appellant] that he had burned [Appellant's] clothes for him. On August 7, 2018, [Appellant] placed another call to Kemp, telling Kemp to cancel [Appellant's] cellphone, purchase a new one, switch [Appellant's] cellphone number to the new phone, and "put a lock on" the new phone.

On August 7, 2018, police arrested [Appellant's] girlfriend, Elizabeth Santosusso, on unrelated drug charges. Detective William Kelhower of the Philadelphia Homicide Unit accompanied the arresting officers. When Detective Kelhower identified himself as a homicide detective and told Santosusso that he wished to question her about [Appellant] and Johnson, she responded, "I can take you to the car." She then directed detectives to her gold 1999 Toyota Solaria parked at Disston Street and Glenoch Street in Tacony. This was the same car that Powell had seen [Appellant] driving when [Appellant] was looking for Carney on the day of the murder. The rear windshield of the car was shattered, with the

glass pattern consistent with having been struck by a bullet that was fired from inside the car. Red stains in the back seat of the car appeared to be blood.

On September 13, 2018, Detective Thomas Gaul of the Philadelphia Homicide Unit questioned [Appellant's] friend and fellow drug dealer Raymond Pullum about the murder. Pullum told Detective Gaul that sometime in July, [Appellant] told him that [he] had "killed [Carney] because he thought [Carney] took his work," but that Carney had not actually taken the "work."

Trial Court Opinion, 11/13/20, at 2-5 (footnotes and record citations omitted).

Appellant and Johnson were both charged in connection with Carney's death, and they were tried together in March 2020. On March 6, 2020, the jury found Appellant guilty of the above-stated charges.[2] On that same date, the trial court imposed the mandatory sentence of life without the possibility of parole for first-degree murder followed by an aggregate consecutive sentence of 12 to 23 years' imprisonment on the remaining counts.

Appellant filed a timely post-sentence motion. On July 15, 2020, the post-sentence motion was denied by operation of law. Appellant thereafter filed a timely notice of appeal.[3]

Appellant presents the following issues for our review:

1. Whether the jury's verdict was against the weight of the evidence?

2. Whether the lower court improperly admitted evidence related to drug dealing by Appellant?

---

[2] Johnson was acquitted of all the charges against him.

[3] Appellant filed his concise statement of errors complained of on appeal on August 19, 2020, and the trial court issued its opinion on November 13, 2020.

3. Whether the trial court improperly admitted evidence related to possession of firearms by Appellant?

4. Whether the trial court improperly admitted hearsay evidence related to witness Santosusso's statement to witness Pullum?

Appellant's Brief at 5 (reordered for ease of disposition; suggested answers omitted).[4]

Appellant first argues that his convictions were against the weight of the evidence. We are guided by the following principles when reviewing a claim that the verdict is against the weight of the evidence. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses." *Commonwealth v. Clemens*, 242 A.3d 659, 667 (Pa. Super. 2020) (citation omitted). A verdict will only be reversed as against the weight of the evidence where the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021) (citation omitted). The factfinder is charged with the responsibility to resolve contradictory testimony and questions of

_____

[4] Appellant raised two additional issues in his statement of questions related to the sufficiency of the evidence as well as the issue of whether the trial court improperly charged the jury with a consciousness of guilt instruction. Appellant's Brief at 5. However, Appellant concedes in his brief that his sufficiency challenge based upon the reliability of testimony identifying him as the perpetrator of the instant crimes was properly addressed in the context of his weight of the evidence claims. *Id.* at 5, 14, 20. Furthermore, as Appellant recognizes in his brief, his issue pertaining to the consciousness of guilt instruction was waived as he failed to object to the charge when discussed during the charge conference or after the charge was given to the jury. Appellant's Brief at 5, 26; *see also* Trial Court Opinion, 11/13/20, at 5-6.

- 4 -

credibility, and we may not substitute our judgment in place of the factfinder. *Commonwealth v. Cramer*, 195 A.3d 594, 600 (Pa. Super. 2018).

A motion for a new trial based on a weight-of-the-evidence claim is addressed to the discretion of the trial court, and therefore we review only the lower court's exercise of discretion and not the underlying question of whether the verdict is against the weight of the evidence. *Commonwealth v. James*, 268 A.3d 461, 468 (Pa. Super. 2021). When reviewing a trial court's determination on a weight claim, we give the "gravest consideration to the findings and reasons advanced by the trial judge" because it is the trial judge, not the appellate court, that had the opportunity to see and hear the evidence presented. *Delmonico*, 251 A.3d at 837 (citation omitted).

Appellant argues that his verdict shocked the conscience because the Commonwealth's two primary civilian witnesses, Lataja Powell and Raymond Pullum, had "severe credibility issues." Appellant's Brief at 14. Appellant contends that Powell's testimony regarding her conversations with Appellant shortly before and after Carney's disappearance[5] should not have been believed because she was a regular user of crack cocaine, heroin, and methamphetamine at the time of the incident and her report to the police.

---

[5] Powell testified, in relevant part, that on or about July 12, 2018, the date of her birthday, Appellant told her that he suspected Carney had taken his stash of drugs and she later saw him circling the block looking for Carney in a gold Toyota sedan. N.T., 3/3/20, at 204-17. Powell stated that she saw Appellant later in the day sitting in his red van; Appellant, who appeared "sad," told Powell that "[h]e didn't take it[,] I found my shit," and "I did something bad." *Id.* at 217-20.

N.T., 3/3/20, at 192, 235, 245. In addition, Powell was under court supervision when the killing occurred based upon two *crimen falsi* convictions. *Id.* at 245-46. Appellant also highlights the fact that Powell did not report the incident until police brought her to the homicide unit for questioning approximately one month after Carney's death.

Appellant also challenges the credibility of Pullum's written and videotaped statement to police that Appellant had confessed to killing Carney. N.T., 3/3/20, at 48-49; N.T., 3/4/20, at 244-45. As Appellant notes, Pullum contested the veracity of his statement to the extent he implicated Appellant in Carney's killing, and he said at trial that he only gave a statement to the homicide detectives because an officer told him that he would be released if he did so. N.T., 3/3/20, at 48-50, 99, 101-02.[6]

The trial court rejected Appellant's weight-of-the-evidence claim, finding that the evidence supported the verdict and that Appellant had not shown grounds for the court to reweigh the evidence in his favor. Trial Court Opinion, 11/13/20, at 22-23. We find that the trial court did not abuse its discretion in rejecting Appellant's claim. The credibility of Powell and Pullum's statements were fully explored during direct and cross-examination. ***See,***

_____

[6] We note that, while Appellant did not discuss the credibility issues related to Powell and Pullum in his Pa.R.A.P. 1925(b) concise statement, he did earlier raise the credibility of these witnesses in his post-sentence motion. Therefore, we do not find that Appellant has waived this claim. ***Cf. Commonwealth v. Rogers***, 250 A.3d 1209, 1222-25 (Pa. 2021) (finding no waiver as to brief weight of the evidence discussion in 1925(b) statement where claim was previously raised in more depth in post-sentence motion).

*e.g.*, N.T., 3/3/20, at 44, 52-53, 72, 91-92, 99, 101-02, 104-05, 192, 204-06, 213, 235, 244-46.  Powell was forthright in her testimony that she accurately remembered her relevant conversations with Appellant concerning Carney, in spite of the fact that she was regularly using drugs at that time.  *See id.* at 235-36 ("I know what's real.  I know what's not.  . . . I still know how to communicate when I'm high . . . it doesn't matter what I'm on, I'm still here.  I still have a memory.").  In addition, Appellant squarely raised the credibility of these witnesses to the jury during closing arguments.  *See, e.g.*, N.T., 3/5/20, at 143-45, 147-49.  We note that while Pullum denied at trial that Appellant had ever confessed to shooting Carney, his statement was confirmed by the written, signed statement, the testimony of the detective that took the statement, as well as a videorecording of his statement played at trial.  *See* N.T., 3/3/20, at 45-80; N.T., 3/4/20, at 236-50; Exhibits C-24-A, C-25-A.

The jury here considered the credibility issues raised by Appellant and it does not shock the conscience that the jury would find Powell's testimony to be credible in spite of her drug use and inability to remember certain details, such as the exact date of the events at issue.  Similarly, the jury acted within its authority to believe Pullum's recorded police statement given shortly after the killing rather than his live testimony at trial.  Therefore, Appellant is entitled to no relief on his first issue.

Appellant's next two issues relate to the admission of evidence of his unrelated criminal acts, which Appellant contends was contrary to the rule set

forth in Pennsylvania Rule of Evidence 404(b).  Appellant argues that the trial court abused its discretion by "allow[ing] repeated references to Appellant as the neighborhood drug dealer," and that "[t]he probative value of these repeated references . . . was clearly outweighed by the prejudicial impact of painting Appellant as a person of extremely poor character."  Appellant's Brief at 22.  Appellant also challenges the admission of testimony by Powell related to Appellant's possession of a firearm, including Powell's statement that Appellant "always had a gun" and her description of an instance in which Appellant disposed of a gun by throwing it into the woods.  N.T., 3/3/20, at 229-32.  Appellant contends that the evidence of his gun possession was highly prejudicial and only minimally relevant since it was not connected to the date of the shooting.

Rule 404(b) provides as follows:

(b) Crimes, Wrongs or Other Acts.

*(1) Prohibited Uses.*  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.*  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).[7]

> This Court has explained that:
>
> In accordance with Rule 404(b)(1), evidence of prior bad acts or criminal activity unrelated to the crimes at issue is generally inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. However, it is well settled that evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Conte*, 198 A.3d 1169, 1180 (Pa. Super. 2018) (internal citations and quotation marks omitted). "Where evidence of prior bad acts is admitted, the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose." *Commonwealth v. Ivy*, 146 A.3d 241, 251 (Pa. Super. 2016) (citation omitted).

We review the trial court's decisions regarding the admission of evidence under an abuse of discretion standard. *Commonwealth v. Green*, 271 A.3d 393, 401 (Pa. Super. 2021). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* (citation omitted).

---

[7] The text of Rule 404(b) printed herein is the version in effect at the time of Appellant's trial. On April 1, 2022, an amended version of Rule 404 went into effect with minor alterations to the quoted portion of the rule.

The Commonwealth filed a motion *in limine* seeking to admit evidence that Appellant and his co-defendant, Johnson, were drug dealers whose customers included Carney and Powell. Commonwealth Motion *in Limine*, 2/25/20, ¶2. The Commonwealth stated that this evidence was necessary to show motive and the natural development of the case. *Id.* At the February 28, 2020 pre-trial hearing, the trial court agreed and ruled that the evidence that the defendants were drug dealers was admissible. N.T., 2/28/20, at 90. In its opinion, the trial court explained its reasoning as follows:

> [Appellant's] drug dealing was inextricably intertwined with every part of the story of the crime on trial. [Appellant] was the victim's drug dealer. Powell was also a customer of [Appellant]. Pullum knew [Appellant] as a fellow drug dealer. [Appellant] sold drugs out of the vehicle that was used in the kidnapping. The motive for the murder was that [Appellant] believed that Carney had stolen his drug stash.

Trial Court Opinion, 11/13/20, at 11 (record citations omitted).

We agree with the trial court that Appellant's drug dealing was admissible as to the motive for the shooting as well as to explain the natural development of the events at issue at trial—the *res gestae* exception to Rule 404(b). *See* Pa.R.E. 404(b)(2) (providing that motive is a recognized exception to rule against prior bad acts evidence); *Ivy*, 146 A.3d at 251 (stating that the *res gestae* exception "permits the admission of evidence where it became part of the history of the case and formed part of the natural development of facts"). As the trial court explained, Appellant's drug dealing was not admitted to show his propensity for criminality but served as an

essential piece of the story connecting all of the individuals involved in the case. In addition, Appellant's belief that Carney stole Appellant's hidden stash of drugs provided the alleged motive for the killing that the Commonwealth sought to establish at trial. The high probative value of the evidence of Appellant's drug dealing outweighed any prejudicial effect from its admittance. Moreover, the trial court properly instructed the jury that this evidence was admissible solely for the purpose of establishing the history of the case and Appellant's motive. N.T., 3/6/20, at 16. We therefore find no abuse of discretion in the trial court's admission of testimony related to Appellant's involvement in the drug trade.

With respect to Powell's testimony regarding Appellant's possession of a gun, the trial court concluded that this issue was waived as no objection was made at the time of Powell's testimony or prior to trial and his motion *in limine* only sought the redaction of certain statements from Powell's written and videotaped statements, including Powell's statement that Appellant "always had a gun on him."[8] Trial Court Opinion, 11/13/20, at 12-13; Appellant's

_____

[8] The trial court further concluded that this issue was waived because it did not rule definitively on the exclusion of Powell's testimony at the pre-trial hearing. *See* Pa.R.E. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). The trial court stated at the hearing "if it's access to guns generally, I think that's admissible. So unless you can come up with some law to show me that that's not admissible, I'm going to let that in." N.T., 2/28/20, at 67. We disagree with the trial court that its ruling was less than a definitive ruling. While the trial court indicated that it could revisit its ruling later if Appellant came forward with

*(Footnote Continued Next Page)*

- 11 -

Motion *In Limine* To Redact Statements, 2/27/20; N.T., 2/28/20, at 66-67.

Appellant explained at the pre-trial hearing that his motion was "anticipatory"

and "only becomes relevant" if a witness "go[es] south" and it "becomes

necessary to use their prior written or videotaped statement." N.T., 2/28/20,

at 4-5; *see also id.* at 84. The trial court ruled that Powell's statement that

Appellant carried a gun was admissible as it showed his access to the type of

weapon used to kill Carney. N.T., 2/28/20, at 67.

During Powell's testimony at trial, the Commonwealth requested that

Powell review her written statement and then asked her whether she had ever

seen Appellant with a gun and she responded that he "always had a gun."

N.T., 3/3/20, at 228-29; *see also* Exhibit C-21-A. The Commonwealth then

asked Powell about an incident in which Appellant told her that he had thrown

a gun in the woods, and he was going to have to go back to retrieve it. N.T.,

3/3/20, at 229. Powell acknowledged Appellant stating at one point that he

was attempting to retrieve a gun that he threw into the woods; however,

despite further probing by the Commonwealth and its request that Powell read

her written police statement, the Commonwealth was not able to elicit

testimony from Powell that her conversation with Appellant occurred after

---

contradictory caselaw, it still provided a sufficiently definite statement that Powell's comments need not be redacted from her prior statements to the police. *See Sullivan v. Werner Co.*, 253 A.3d 730, 751 (Pa. Super. 2021) (finding that trial court ruling was definitive where court denied motion to exclude expert testimony on cause of an accident but stated "I think that's enough to allow it to go to the jury, but we'll see later on").

Carney's murder. *Id.* at 229-232. Appellant did not object at any point to Powell's trial testimony regarding him carrying a gun or throwing a gun into the woods.

We cannot agree with the trial court that Appellant waived his objection to Powell's testimony at trial that Appellant "always had a gun." N.T., 3/3/20, at 229. While Appellant's motion *in limine* was limited to requests for redactions from Powell's written and videotaped statements and not her live trial testimony, her testimony that Appellant regularly kept a gun was made directly after she was asked to read her written statement. *Id.* at 228-29. On the other hand, we do not conclude the same as to Powell's testimony regarding Appellant's statement to her that he had thrown his gun in the woods and he needed to go back and get it. *Id.* at 229-232. Appellant did not object to Powell's testimony on this subject nor did he seek to redact this topic from Powell's written statements even though it is discussed in her written statement to police. *Id.*; Exhibit C-21-A. Therefore, Appellant cannot now challenge Powell's testimony regarding her conversation with him about throwing the gun in the woods. *See* Pa.R.E. 103(a)(1); *Commonwealth v. Radecki*, 180 A.3d 441, 455 (Pa. Super. 2018) (failure to raise contemporaneous objection waives issue on appeal).

It is well-established that "[a] weapon not specifically linked to the crime is generally inadmissible." *Commonwealth v. Christine*, 125 A.3d 394, 400 (Pa. 2015) (citation and quotation marks omitted). However, under the "similar-weapon exception" to Rule 404(b), the fact that "the accused had a

weapon or implement suitable to the commission of the crime charged . . . is always a proper ingredient of the case for the prosecution." ***Id.*** (citation omitted). "The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." ***Id.*** (citation omitted); ***see also Commonwealth v. Edwards***, 903 A.2d 1139, 1156-57 (Pa. 2006).

We agree with Appellant that the trial court's admission of Powell's statement that Appellant "always had a gun" was an abuse of discretion. N.T., 3/3/20, at 229. The Commonwealth made no effort to lay a foundation that would justify an inference by the jury that the gun Appellant regularly carried was similar to the type of weapon that could discharge the "45 auto" cartridge that was used to kill Carney. ***Christine***, 125 A.3d at 400; ***see also*** N.T., 3/4/20, at 219-21 (firearm identification expert explaining that "45 auto" cartridge could be fired by a semi-automatic pistol and some rifles that use pistol cartridges). Indeed, there was no testimony at all concerning the type of gun Appellant regularly carried.

However, the admission of this evidence was harmless error. An appellate court may find that an error is harmless when it finds beyond a reasonable doubt that:

> (1) [t]he error did not prejudice the defendant or the prejudice was de minimis; or
>
> (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or

(3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Holt***, 273 A.3d 514, 540 (Pa. filed April 28, 2022).[9] The Commonwealth must prove that an error was harmless beyond a reasonable doubt; however, an appellate court may invoke the harmless error doctrine sua sponte in cases where not addressed by the trial court or raised by the parties, as it relates to this issue. ***Id.***; ***Commonwealth v. Hamlett***, 234 A.3d 486, 492 (Pa. 2020).

Here, the error of the admission of Powell's testimony that Appellant "always had a gun" was *de minimis*. N.T., 3/3/20, at 229. Powell's statement was fleeting and was followed immediately by lengthy testimony regarding an incident when Appellant told her that he threw "his" gun into the woods and then went searching for it. ***Id.*** at 229-32. Despite the Commonwealth's request that Powell review her statement to the police and repeated questions posed to her, she ultimately could not remember whether this incident occurred before or after Carney's killing. ***Id.*** at 230-32. Therefore, Powell's further, unobjected-to testimony regarding this incident demonstrated that Powell understood Appellant to have been in possession of a firearm at some time before or at some time after Carney's death and therefore had a similar effect on the jury as her statement that he "always" had a gun. ***Id.*** at 229;

---

[9] While portions of the ***Holt*** decision failed to command a full majority of the Court, we cite the decision only to the extent its analysis constitutes a precedential opinion.

*see Holt*, 273 A.3d at 540 (harm associated with erroneously admitted testimony that defendant had been seen with an unspecified firearm tucked in his waistband was *de minimis* where Commonwealth had properly introduced other testimony that defendant was in possession of a firearm consistent with the murder weapon weeks before the shooting).

Appellant next argues that the trial court abused its discretion by permitting the introduction of Pullum's statement to police that Appellant's girlfriend, Elizabeth Santosusso, said to him regarding her gold Toyota sedan: "Don't go near that car or get into it. **It was used in a murder**." N.T., 3/4/20, at 246 (emphasis added). Appellant contends that the statement that the Toyota was used in Carney's Murder, which was read to the jury by Detective Thomas Gaul who took Pullum's statement, could not have been admitted as his prior inconsistent statement because Pullum was not cross-examined as to whether Santosusso made that statement to him. Furthermore, Appellant asserts that there was insufficient evidence to show that the statement passed the first level of hearsay—that Santosusso was told that the vehicle "was used in a murder" by Appellant and therefore the statement could be admitted under the exception for the statement of a party opponent. *See* Pa.R.E. 803(25)(A). Appellant contends that the hearsay was effectively an "extremely unreliable 'confession'" which deprived him of his due process right to a fair trial. Appellant's Brief at 25.

In its Pa.R.A.P. 1925(a) opinion, the trial court explained that—as to the first layer of hearsay—there was abundant evidence of record that

Santosusso's statement that the vehicle "was used in a murder" was based upon representations made to her by Appellant and thus this statement fell under the party opponent exception. Trial Court Opinion, 11/13/20, at 8 (discussing text messages exchanges between Appellant and Santosusso and Santosusso and a mutual friend); *see also* N.T., 3/3/20, at 272-73. The court further concluded that Pullum's statement to Detective Gaul could be admitted because it was a written, signed statement and, when confronted with the statement at trial, Pullum testified that many of the specific factual assertions appearing therein were fabricated. Trial Court Opinion, 11/13/20, at 8; *see also, e.g.*, N.T., 3/3/20, at 48-49, 51, 53, 58, 61-64, 67, 72-73. Even assuming that the Pullum's statement was improperly admitted, the trial court concluded that the admission was harmless error as it was merely cumulative of other similar evidence showing that Santosusso was aware that her car was used in Carney's killing. Trial Court Opinion, 11/13/20, at 9-10.

In its appellate brief, the Commonwealth recognizes that Pullum's statement could not be admitted as Pullum's prior inconsistent statement. The Commonwealth notes that, while Santosusso denied at trial making this statement to Pullum, N.T., 3/3/20, at 139-40, Pullum himself was not asked whether he reported to police that Santosusso told him that her car "was used in a murder." Commonwealth's Brief at 14 (citing Pa.R.E. 803.1(1), providing for hearsay exception for "[a] prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony"). However, the Commonwealth asserts that the statement constituted harmless error because

it was cumulative of other similar evidence and the harm associated with it was *de minimis* as Detective Gaul only read Pullum's written statement once.

Upon review, we agree with Appellant and the Commonwealth that Pullum's statement that Santosusso told him that the gold Toyota was "used in a murder" does not fall within a valid hearsay exception as a result of the fact that Pullum was not cross-examined as to whether he made this statement to police. Hearsay is generally not admissible unless it falls within one of the exceptions set forth in the Pennsylvania Rules of Evidence. Pa.R.E. 802; **Commonwealth v. Savage**, 157 A.3d 519, 524 (Pa. Super. 2017). Relevant here, a prior inconsistent statement of a witness, including a written statement signed and adopted by the witness, shall not excluded by the rule against hearsay where the witness "testifies and is subject to cross-examination about the prior statement." Pa.R.E. 803.1(1)(B).

While the Commonwealth examined Pullum on the basis of the written statement and he denied at trial making some of the incriminating assertions contained in his statement, Pullum was not specifically asked whether he told the detective that Santosusso said that the gold Toyota "was used in a murder." Instead, Pullum was only asked about the first portion of the statement—whether Santosusso told him "[d]on't go near that car or get into it"—which Pullum denied saying to police. N.T., 3/3/20, at 67. The reason that Pullum was not asked about whether the vehicle was "used in a murder" was because the trial court initially ruled prior to trial that that portion of the statement should be redacted from Pullum's statement to police. N.T.,

2/28/20, at 56-57.[10]   Therefore, because the parties did not have the opportunity to examine Pullum regarding his statement regarding the vehicle being "used in a murder," it could not be admitted as Pullum's prior inconsistent statement.  **See** Pa.R.E. 803.1, Comment ("A witness must be subject to cross-examination regarding the prior statement."); **see also Commonwealth v. Romero**, 722 A.2d 1014, 1017-18 (Pa. 1999) (parties must be given opportunity to examine witness as to specific prior inconsistent statement at issue); **Commonwealth v. Carmody**, 799 A.2d 143, 148 (Pa. Super. 2002) ("[T]he inconsistent statement itself must be the subject of the cross-examination in order to satisfy the test.").

Nevertheless, we also agree with the trial court that the admission of this statement was harmless error as it was cumulative of other substantially similar, properly admitted evidence at trial showing Santosusso's awareness that the Toyota was used in Carney's killing.  **See Holt**, 273 A.3d at 540.  In addition to Santosusso's direction to Pullum not to go near her car,[11] Santosusso told Powell "[d]on't touch the car" because "[y]ou don't want your

---

[10] At the urging of the Commonwealth, the trial court reconsidered its ruling on this issue during trial but after Pullum's testimony, finding that Detective Gaul would be permitted to include the phrase when recounting Pullum's statement.  N.T., 3/3/20, at 272-73.  Counsel for the Commonwealth and Appellant both agreed that the trial court's ruling was subject to reconsideration at trial.  **Id.** at 260.

[11] As explained above, Appellant does not challenge this portion of Pullum's written police statement, which was properly admitted as a prior inconsistent statement.

fingerprints to get on that car." N.T., 3/3/20, at 222. Santosusso also admitted that she told Powell and others to "stay out of the fricking car." *Id.* at 141. Upon being arrested and while being transported for questioning by detectives approximately one month after Carney's killing, Santosusso led the detectives directly to her vehicle parked on a public street in Philadelphia without even being told by the detectives that they were investigating Carney's death. *Id.* at 134, 136; N.T., 3/5/22, at 13-16. Moreover, upon its discovery, the condition of the car showed that it had been the location of a violent confrontation as there were spots of apparent blood discovered on the seats and headrest and the back windshield was blown out in a manner consistent with a bullet having pierced it from the inside. N.T., 3/4/22, at 161-64. Therefore, as the admission of Pullum's statement was harmless error, no relief is due on this appellate issue.

Finally, during the course of our review of the record, we have detected an additional issue with respect to the legality of Appellant's sentence on the kidnapping charge. "The legality of a criminal sentence is non-waivable, and this Court may raise and review an illegal sentence *sua sponte*." ***Commonwealth v. Derrickson***, 242 A.3d 667, 673 (Pa. Super. 2020) (citation omitted).

At sentencing on March 6, 2020, the trial court stated that it was sentencing Appellant as follows:

> [O]n the charge of first-degree murder, I sentence you to life in prison, that will be without the possibility of parole. **On the kidnapping charge, I'll give you a guideline sentence of six**

- 20 -

**to 12 years in state prison**. . . . Obstruction of justice, I'll give you a guideline sentence of one to two years. For carrying a firearm without a license, three and a half to seven years. . . For possessing an instrument of crime, I will give you one to two years.

. . . [T]hey are to run consecutive to each other and consecutive to the murder charge -- that would yield a sentence of **life imprisonment, plus 11 and a half to 23 years**.

N.T., 3/6/20, at 92-93 (emphasis added).

However, the written sentencing order diverged from the sentence imposed orally, providing that Appellant was to serve a term of imprisonment of 6 years **and 6 months** to 12 years for kidnapping, which resulted in an aggregate sentence of **12** to 23 years' imprisonment consecutive to Appellant's life sentence. Sentencing Order, 3/6/20. Where there is a discrepancy between the trial court's written sentencing order and its statements at the sentencing hearing, it is the sentencing order that controls. *Commonwealth v. Sarvey*, 199 A.3d 436, 451-52 (Pa. Super. 2018); *Commonwealth v. Willis*, 68 A.3d 997, 1010-11 (Pa. Super. 2013). "In Pennsylvania, the text of the sentencing order, and not the statements a trial court makes about a defendant's sentence, is determinative of the court's sentencing intentions and the sentence imposed." *Sarvey*, 199 A.3d at 451.

Section 9756(b)(1) of the Sentencing Code states that the sentencing court "shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed." 42 Pa.C.S. § 9756(b)(1). This provision of the Sentencing Code is mandatory, and any sentence in derogation of this provision is illegal unless specifically authorized

by statute. ***Commonwealth v. Postie***, 110 A.3d 1034, 1044 (Pa. Super. 2015); ***Commonwealth v. Van Fossen***, 749 A.2d 510, 510 (Pa. Super. 2000).

Here, the minimum sentence on Appellant's kidnapping charge according to the sentencing order was 6 years and 6 months and the maximum sentence was 12 years. As the minimum exceeded one half of the maximum, the kidnapping sentencing is illegal. 42 Pa.C.S. § 9756(b)(1); ***Postie***, 110 A.3d at 1044. Accordingly, we affirm Appellant's convictions but vacate the trial court's March 6, 2020 sentencing order and remand for resentencing on the kidnapping charge. ***See Commonwealth v. Bartrug***, 732 A.2d 1287, 1289 (Pa. Super. 1999) (holding that if a trial court errs in sentencing on one count in a multi-count case, then sentences for all counts must be vacated).

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing consistent with this decision. Jurisdiction relinquished.

Judge Murray joins the memorandum.

Judge Dubow concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/15/2022